**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA )

VS. ) C.A. NO. 07-211S

KEITH BEAUCHAMP, WAYNE BEAUCHAMP)
and DEAN COOPERATIVE BANK )

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS**

The defendants, *KEITH BEUACHAMP, WAYNE BEAUCHAMP and DEAN COOPERATIVE BANK* hereby answer the allegations contained in the plaintiff's Complaint and assert their counterclaims as follows:

1 – 4. Admitted

5 – 9. The defendants do not have information sufficient to form a belief as to the allegations contained in these paragraphs. The plaintiff is, accordingly, left to its proof thereon.

10 – 11. Admitted

12. The defendants do not have information sufficient to form a belief as to the allegations contained in this paragraph. The plaintiff is, accordingly, left to its proof thereon.

13. The defendants admit the allegations contained in the first sentence of paragraph 13 but deny the allegations contained in the second sentence thereof.

14. The defendants admit the allegations contained in the first and second sentences of paragraph 14 but deny the allegations contained in the third sentence thereof.

15 – 16. Omitted

17. The defendants admit that they are the holders of record title to the property by deed from Raymond 25 Associates dated June 30, 2006, but deny the remaining allegations contained in paragraph 17.

18. Denied

## DEFENSES

19. The plaintiff's action for declaratory relief must be dismissed for failure to join indispensable parties.

20. This action fails to state a claim upon which relief may be granted as to these defendants.

21. The plaintiff's action is barred by the equitable doctrines of laches, unclean hands, estoppel, unjust windfall and other equitable defenses.

22. The subject lien has been discharged and/or rendered null and void as to the subject property law by and/or in equity.

23. The plaintiff has failed to perfect its claim in law and in equity.

24. The plaintiff's claims, if any, are legally and full subordinate and/or subrogated to the interests of the defendants pursuant to 26 USCS 623(i)(2).

25. The plaintiff's claims, if any, are equitably subordinate and/or subrogated to those of the defendants.

26. The plaintiff's action is time barred pursuant to the dictates of 26 USC 7425(d)(1).

**WHEREFORE**, the defendants pray for the following relief:

(1) Denying and dismissing the plaintiff's claims with prejudice.

(2) Entering judgment for the defendants on all claims, demands and counts contained in plaintiff's Complaint.

(3) Awarding the defendants relief as requested in their counterclaims.

(4) Awarding the defendants their costs; and

(5) For such other and further relief as this Court deems just and proper under the circumstances.

KEITH BEAUCHAMP, WAYNE BEAUCHAMP
and DEAN COOPERATIVE BANK
By their Attorney,

/S/ James P. Marusak

JAMES P. MARUSAK
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
401-274-6644
fax: 401-331-9304
jpm@gsm-law.com

**COUNTERCLAIMS**

27. The defendants' answers to the allegations contained in paragraphs 1-18 and the defenses raised numbered 19-26 of the plaintiff's Complaint are incorporated herein by reference.

**COUNT I**
**(DECLARATORY JUDGMENT)**
**(Confirmation of Title)**

28. The defendants, Keith and Wayne Beauchamp, are record holders in fee simple of the subject premises pursuant to the deed from 25 Raymond Associates, LLC, dated June 30, 2006 (a true and accurate copy of the subject deed is attached as **Exhibit A**).

29. The defendant Dean Bank is the current holder of a purchase money mortgage secured by the subject premises in the amount of $344,000.00 recorded at Book 658, p.911, of the Land Evidence Records of the Town of Narragansett, Rhode Island. (A true and accurate copy of the mortgage is attached as **Exhibit B-1**; copy of the underlying Note is attached as **Exhibit B-2**.)

30. The funds provided by the defendants were applied to the purchase of the subject property from 25 Raymond Associates, the holder of a mortgage dated April 15, 1993, which said mortgage was duly foreclosed by said mortgagee under Power of Sale on or about January 19, 2006 (mortgage deed dated April 15, 1993, attached as **Exhibit C**; assignment of mortgage to Raymond 25 attached as **Exhibit D**; Statutory Form of Foreclosure Deed to Raymond 25 attached as **Exhibit E**; Affidavit of Sale attached as **Exhibit F**; Affidavit of Notice attached as **Exhibit G**; advertisement of sale attached as **Exhibit H**).

31. Prior to obtaining their interests in the subject property, the defendants' attorneys obtained customary confirmation from the attorneys for the grantors, Raymond 25 Associates, LLC, that the plaintiff was duly notified and that the plaintiff failed to contact the grantor or to redeem within 120 days following the foreclosure as required by law. (see Affidavit attached as **Exhibit I**) .

32. As a result thereof, the subsequent transfers of interest to the defendants were free and clear of the tax lien now asserted by the plaintiff.

33. The funds delivered by the defendants at closing in June of 2006 actually funded the purchase of the property at fair market value from the owner in fact, Raymond 25, and benefited the original, pre-existing mortgagee—Kaleb Realty RIGP and/or Nomar Realty Trust (**Exhibit D**) and its assignee, the grantor, Raymond 25. Now, absent the defendants' own direct and affirmative intervention and without immediate Court action on this Complaint for Declaratory Judgment, the defendants will be unable to correct the resulting cloud on title created by the recorded appearance of the legally discharged IRS lien now maintained and asserted by the plaintiff.

34. The defendants' rights, status, legal relations and responsibilities, as well as those of various other persons and parties, including future purchasers of the subject premises and bona fide mortgagees, may be adversely and irreparably affected if the Court does not, forthwith, enter a declaratory judgment clearing, declaring and/or quieting the title as prayed herein. Specifically, the defendants request that the title be cleared and quieted by confirming that the transfer from Raymond 25 to defendants was accomplished free and clear of any claimed interests of the IRS. The defendants also pray that any interests of the plaintiff in or to the subject property be declared equitably and legally discharged, barred, subrogated and/or subordinated as to the interests of the defendants, their heirs, mortgagees, successors and assigns.

35. The plaintiff and defendants have not resolved their differences although it was intended and understood that the subject premises were to be duly vested, free and clear of all encumbrances, in the defendants as referenced in paragraph 34 hereof.

WHEREFORE, the defendants demand as follows:

1. That title to the subject premises be declared and quieted in accordance with the intention of the parties as prayed so as to confirm a fee simple estate in the defendants, Wayne and Keith Beauchamp, their heirs, mortgagees, successors and assigns, subject only to the current mortgage of the defendant, Dean Cooperative Bank.

2. That the defendants' interests be declared primary to, and exclusive of, any alleged claims or interests of the plaintiff.

3. Declaring that any and all claims and interests of the IRS in the subject premises are discharged, released and void.

4. For such other and further relief as may be deemed just and proper under the circumstances.

**COUNT II**
**(EQUITABLE SUBROGATION AND SUBORDINATION)**

36. Paragraphs 1 – 35 are incorporated herein by reference.

37. The defendants' funds were directly and actually applied to satisfy existing priority or purchase money encumbrances and to purchase the subject property from a pre-existing mortgagee at fair market value. Such payments were made by the defendants to protect their own interests, not as volunteers, for debts for which they were not previously liable, in satisfaction of the entirety of the pre-existing debt and not in detriment to the rights of others (see Han v. United States, 944 F.2d 526 (9th Cir. 1991)). Such payments are, accordingly, superior to any purported remaining interests of the IRS.

38. Additional proceeds supplied by the defendants were paid and applied directly to the satisfaction of various fees, commissions, taxes, liens and costs relating to the

purchase, financing, upkeep, enhancement, re-financing, maintenance and preservation of the subject premises.

39. Any purported interests of the IRS are, accordingly, both equitably and legally dischargeable and are fully subrogated and subordinated to the defendants' prior interests. See Potter v. U.S., 111 F.Supp. 585 (D. R.I. 1953)

**COUNT III**
**(QUIET TITLE)**

40. Paragraphs 1 – 39 are incorporated herein by reference.

41. The defendants are entitled to an Order of this Court removing any cloud on their title to, and ownership of, the subject premises, quieting title in them pursuant to R.I.G.L. §34-16-1 et seq, and to damages and expenses incurred pursuant to R.I.G.L. §34-11-33.

**COUNT IV**
**(MARSHALLING)**

42. Paragraphs 1 – 41 are herein incorporated by reference.

43. The defendants were, and are, bona fide purchasers for value who took title to and solely maintained the subject property for valuable consideration without actual knowledge of the purported interests, if any, of the IRS.

44. To the extent that the IRS obtained or retained any valid interest in the subject premises, which such interest is specifically denied, the IRS is, upon information and belief, currently able to pursue several other sources of repayment for the alleged

indebtedness owed by Rose, Borland, Kaleb Realty, RIGP, Nomar Realty Trust and/or Raymond 25.

45. Such alternative sources include the assets and property of Rose, the assets and property of Borland and Nomar Realty Trust and any and all proceeds of the closing distributed to Raymond 25 Associates, LLP, in June of 2006.

46. The defendants have no adequate remedy at law, and the plaintiff IRS should marshal its assets in equity accordingly.

WHEREFORE, the defendants pray that judgment enter in their favor as follows:

1. Declaring the interests of plaintiff, if any, in the subject property to be discharged, unenforceable, illegal, cancelled, null and void.

2. Ordering plaintiff, the IRS, to marshal otherwise available and identifiable assets as against the parties and/or persons of interest stated in paragraphs 44 and 45.

3. Quieting and declaring title to the subject property as duly vested in the defendants Keith and Wayne Beauchamp, and/or their successors in interest, Subject only to the first priority mortgage of defendant Dean Cooperative Bank.

4. Alternatively, declaring the interests of the plaintiff to be discharged, exhausted, extinguished, barred and/or subrogated and subordinated to the superior title and interests of the defendants in the subject property.

5. Directing the plaintiff to execute any and all instruments necessary to effectuate the discharge of its purported liens and interests of record.

6. For such other and further relief as may be just and proper, including damages, costs and expenses pursuant to R.I.G.L. 34-11-33.

Respectfully submitted,

Defendants Keith Beauchamp, Wayne Beauchamp and Dean Cooperative Bank
By their Attorneys,

/S/ JAMES P. MARUSAK

JAMES P. MARUSAK
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
401-274-6644
fax: 401-331-9304
jpm@gsm-law.com

CERTIFICATION

I hereby certify that on the 8th day of August, 2007, a true copy of the foregoing document was served upon each attorney of record, or pro se litigant, listed below by electronic filing of this document with the US District Court for the District of Rhode Island.

Robert J. Kovacev, Trial Attorney
US Department of Justice – Tax Division
PO Box 55
Ben Franklin Station
Washington, DC 20044
RobertJ.Kovacev@usdoj.gov

/S/ James P. Marusak

**VERIFICATION**

I, JOHN T. WALSH, JR., Closing Attorney for the defendants herein, on oath, depose and say that I have read the above-referenced allegations in paragraphs 1 - 46, and they are true to the best of my knowledge and belief.

JOHN T. WALSH, JR.

Subscribed and sworn to before me at Cumberland, this 7th day of August, 2007.

Notary Public
My commissioner expires:

33322

BOOK 658 PAGE 909

# QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS, that RAYMOND 25 ASSOCIATES, LLC a Rhode Island limited liability company with offices located at 23 Acorn Street, Providence, RI 02903 in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, grant with QUITCLAIM COVENANTS to KEITH BEAUCHAMP and WAYNE BEAUCHAMP of 89 Cental Street, Manville, RI 02838 that certain lot or parcel of land, together with the buildings and improvements situated thereon, located in the Town of Narragansett, County of Washington, State of Rhode Island, bounded and described as follows:

That certain lot or parcel of land with all the buildings and improvements thereon, situated on the southerly side of Chapin Road, in the Town of Narragansett, County of Washington and State of Rhode Island, said real estate being laid out and designated as Lot No. 14 (fourteen) on that certain recorded plat entitled "Section 1 North Gate in Narragansett, Rhode Island, L. Douglas Couchon et ux Dorothy L. = Owner Scale: 1" = 50' J.A. Johnson, Surveyor Dec. 1969. Drainage revisions, may 1971, A.J. Easterbrooks, C.E."

Said premises are subject to restrictions of record

BEING further described as NQ 00044 - 14 of the Tax Assessor's Records of the Town of Narragansett, RI

The Seller does hereby covenant that it is a Rhode Island limited liability company and it's members are all Rhode Island residents and that there is no withholding due in compliance with the provisions of RIGL 44-30-71.3.

BEING the same premises conveyed to this Grantor by deed dated April 10, 2006 and recorded in Book 652 at Page 747 of the Land Evidence Records of the Town of Narragansett.

IN WITNESS WHEREOF, these presents are executed on this the 28th day of June, 2006.

RAYMOND 25 ASSOCIATES, LLC

By [signature]
HAROLD T. PANCIERA, JR.

RECORDED TOWN OF NARRAGANSETT
DATE 6-30-06

009520

EXHIBIT
A

BOOK 658 PAGE 910

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Cumberland on the 28th day of June, 2006, before me personally appeared Harold T. Panciera, Jr., to me known and known by me to be the Manager and managing Member of Raymond 25 Associates, LLC, the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed and the free act and deed of Raymond 25 Associates.

Notary Public John T Walsh J
Commission Expires: 7/18/2009

JOHN T. WALSH, JR. STATE OF - MY - COMMISSION EXPIRES JULY 18, 2009 RHODE ISLAND NOTARY PUBLIC

Grantees Address
89 Central Street
Manville, RI 02838

RECEIVED FOR RECORD
ON 6-30-06 AT 1:43 pm
WITNESS: CAROL ROBBINS, CMC
NARRAGANSETT TOWN CLERK

33323

BOOK 658 PAGE 911

# COMMERCIAL MORTGAGE

KNOW ALL PERSONS BY THESE PRESENTS THAT Keith Beauchamp and Wayne Beauchamp, having a principal business address of 89 Central Street, Manville, RI, 02838, hereinafter called the Mortgagor, for consideration paid, grants to the

DEAN CO-OPERATIVE BANK

Located at 21 Main Street, Franklin, Norfolk County, Massachusetts 02038, hereinafter called the Mortgagee, with MORTGAGE COVENANTS, to secure (i) payment of Three Hundred Forty Four Thousand Dollars and 00/100 ($344,000.00) with interest thereon, pursuant to the terms and provisions of a certain note of even date herewith and such further sums as may be advanced by the Mortgagee as authorized under Massachusetts General Laws, (ii) obligations under a certain Construction Loan Agreement if entered into in connection herewith; (iii) the obligations of Guarantors under any guaranty given with respect to obligation secured hereby; (iv) all other obligations contained in or created under the Note or in or under any other instruments, documents or undertakings given or entered into as security for or in connection with the Note; and (v) all covenants and agreements contained herewith (all of the above enumerated obligations, as any of the same may be from time to time amended or extended, jointly and severally constituting the "Obligations"), the collateral hereinafter specified.

All references in the Mortgage Documents to a "note" or a "note of even date" or similar reference shall be deemed to refer to the Note, and all other future replacements, renewals, amendments, extensions, modifications and substitutions thereof.

1. THE COLLATERAL. The following items constitute the Collateral given to secure the Obligations hereunder and shall be included within the word "Collateral" as used herein:

1.1 The land with buildings thereon known and numbered as:

25 Raymond Street
Narragansett, RI 02882

as more specifically described in Exhibit "A" Attached Hereto

1.2 STRUCTURES, FIXTURES AND IMPROVEMENTS. Insofar as the same are or can, by agreement of the parties, be made a part of the realty, all buildings, structures and improvements, fixtures, equipment and appliances, personal property, goods, supplies and materials now or hereafter erected or placed on or affixed to the Premises or used or intended to be used in connection therewith or paid for from the proceeds of the loan secured hereby, including without limitation all elevators and elevator machinery, apparatus and equipment for the production and distribution of heated and cooled air conditioning controls, fuel storage tanks, bins and other fuel facilities, all kitchen, bathroom and plumbing fixtures, machinery, equipment, apparatus and facilities, ovens, stoves, refrigerators, dishwashers, washing machines and dryers, all sprinklers and fire



EXHIBIT
tabbies
B-1

extinguishing systems, doorbell and alarm systems, all electric power generating systems, transformers and electrical distribution systems, equipment and facilities, ventilation and blower systems, garbage and trash receptacles, compactors and incinerators, all window shades, blinds, screens and screen doors, storm and other detachable windows and doors, awnings, cases, counters, closets, partitions, carpets and other floor coverings, signs, directories and other advertising or informational equipment, steel, bricks, lumber and masonry materials, paving materials, fences and fencing materials, insulation and sound deadening materials, trees, shrubs and other landscaping items and improvements.

1.3 ITEMS NOT PART OF REALTY. All personal property belonging to Mortgagor situated on or about the Premises or used in connection therewith or paid from the proceeds of the loan secured hereby, including/without limitation any of the items referred to in Paragraph 1.2, which are not and cannot, by agreement of the parties, be made a part of the realty.

1.4 PERMITS AND LICENSES, CONTRACTS. All contracts, agreements, permits, licenses and approvals entered into or obtained by or on behalf of Mortgagor or Mortgagor's predecessors relating to the construction, reconstruction, development and use of the Collateral, now existing or hereafter obtained or entered into, including without limitation construction contracts and bonds, architectural, engineering and consulting contracts, contracts for materials and fixtures, building permits, variances, special permits, and curb cuts, occupancy permits, health permits, liquor, Victualer's and hotel permits and licenses, agreements and letter of assurance from utilities and Mortgagor's rights in all plans, drawings and specifications relating to or prepared in connection with the Premises.

2. <u>GRANT OF SECURITY INTEREST.</u> In addition to and not in limitation of the mortgage interest in real estate herein granted, Mortgagor hereby grants to Mortgagee, as security for payment and performance of the Obligations, a Security Interest in accordance with the provisions of the Uniform Commercial Code in and to any item or category of Collateral which may be made subject to such an interest and in all proceeds and products therefrom, accessions thereto and substitutions therefor.

3. <u>ASSIGNMENT OF LEASES.</u> In addition to and not in limitation of any other security given for payment and performance of the Obligations, Mortgagor hereby grants, assigns and transfers the Leases covering the collateral to Mortgagee. Notwithstanding such assignment, for so long as no default exists under the Obligations, Mortgagor shall have the right to collect and retain all rents, issues and profits from the Leases and to exercise all rights to the use, enjoyment and control of the property obtained thereunder, provided that Mortgagor shall not collect any rents, issues or profits for a period of more than thirty (30) days in advance. Whether or not a default under the Obligations exists, or Mortgagee has exercised its right hereunder, Mortgagor agrees faithfully and promptly to perform all of its duties and obligations under the Leases, to enforce and secure performance of the occurrence of a default under the Obligations and at any time

thereafter until Mortgagee has accepted cure, Mortgagee may, without waiving such default or any other right or remedy with respect thereto, exercise all of Mortgagor's rights under the Leases, including without limitation the right to collect and expend or apply rents, issues and profits and to use, enjoy and control property obtained thereunder. Until such time as Mortgagee affirmatively elects to exercise its rights hereunder, Mortgagee shall be under no obligation, claim or liability arising prior to such exercise and any such obligation, claim or liability arising after exercise, except such as are caused by the willful malfeasance or gross negligence of Mortgagee. Mortgagee shall have the right to expend or apply any rents, issues or profits received by it in the exercise of its rights hereunder to the satisfaction of the Obligations and to reimburse Mortgagee for any costs or expenses incurred by it in connection with the Obligations and with the exercise of its rights hereunder in whatever order Mortgagee deems appropriate. Mortgagor agrees to cooperate with Mortgagee in the establishment and exercise of Mortgagee's rights hereunder, including without limitation by the execution upon request of an assignment of lease in such expanded form as Mortgagee may require and the giving of any notices to tenants and other third parties requested by Mortgagee in connection herewith.

4. <u>MORTGAGOR'S COVENANTS.</u> Mortgagor covenants and agrees:

4.1 OBSERVANCE OF OBLIGATIONS. To pay, perform and observe all of the Obligations.

4.2 REPAIR, OBSERVANCE OF LAW, USE. To keep and maintain the Collateral at all times in good order, repair and conditions, permitting and suffering no strip, waste or abandonment of the Collateral to occur nor any violation of any law, ordinance, rule or regulations or any order or decree by any court or agency of competent jurisdiction or of any public or private restriction affecting the Collateral or the use thereof and not to materially change or alter the Collateral or the use of which the same is devoted without the prior written consent of Mortgagee.

4.3 HAZARDOUS WASTE. To maintain the Collateral at all times free of hazardous waste, contaminants, oil, radioactive or other material the removal of which is required or the maintenance of which is prohibited or penalized, and Mortgagor warrants and represents that the Collateral is affected by no such materials as of the date of this Mortgage and Security Agreement or that Mortgagor has fully informed Mortgagee in writing of the existence, extent and exact nature of any such materials affecting the Collateral, has delivered to Mortgagee copies of all permits, licenses and approvals required with respect thereto and is fully authorized and empowered, by virtue of such items, to maintain such materials. Mortgagor agrees promptly: (i) to notify Mortgagee in writing of any change in the nature or extent of such materials maintained; (ii) to transmit to Mortgagee copies of any citations, orders, notices or other material governmental communications received with respect thereto; (iii) to observe and comply with any and all laws, ordinances, rules, regulations, licensing requirements or

conditions relating to the use, maintenance and disposal of such materials and all orders or directives from any official, court or agency of competent jurisdiction relating to the use or maintenance or requiring the removal, treatment, containment or other disposition thereof; and (iv) to pay or otherwise dispose of any fine, charge or imposition related thereto which, if unpaid, would constitute a lien upon the Collateral. Any cost, expense, loss or damage incurred or suffered by Mortgagee and growing out of a failure of Mortgagor to strictly observe and perform the foregoing requirements, including without limitation reasonable attorney's fees, shall be reimbursed to Mortgagee promptly upon demand and, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.4 TAXES AND CHARGES. To pay when due all taxes, charges, assessments and water rates, on or against the Collateral or any interest therein or any payments in lieu thereof, to whomever the foregoing may bear laid or assessed, including without limitation with respect to, condominium units assessments for common expenses.

4.5 PROOF OF PAYMENT OF TAXES AND ASSESSMENTS. To promptly forward to Mortgagee after payment receipted tax bills or other evidence of payment acceptable to Mortgagee covering all items which Mortgagor is required to pay in accordance with the provisions of this Mortgage.

4.6 LIENS ON COLLATERAL. To notify Mortgagee promptly of any lien, encumbrance or security interest existing, arising or asserted against the Collateral or any interest therein and to maintain the Collateral or any interest therein and payable, unless the same have been approved in writing by Mortgagee. With respect to security interest thus approved by Mortgagee, Mortgagor agrees to make all payments that become due to any secured party holding such interest, and, at the request of Mortgagee, to assign to Mortgagee all right, title and interest in and to any and all agreements evidencing such security interest covering any of the Collateral, and Mortgagor hereby grants Mortgagee full power and authority as attorney irrevocable of Mortgagor to make, execute, acknowledge and deliver such assignments. Mortgagor further agrees that if Mortgagor shall default in making any such payments, Mortgagee may, without obligation to do so and without waiving any right or remedy for default hereunder, make such payment or may pay the entire balance due to such secured party. Mortgagor shall reimburse Mortgagee for any amount thus expended promptly upon demand, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.7 FINANCIAL STATEMENTS. To submit to Mortgagee income, expense and other financial statements and data concerning the Collateral, Mortgagor and any guarantor at such times, in such form and containing such information as Mortgagee may from time to time request.

4.8 INSURANCE OF COLLATERAL. To keep the Collateral insured against fire and such casualties and contingencies as Mortgagee may from time to time require, to deposit, at the request of the Mortgagee, all insurance policies or memoranda thereof with Mortgagee forthwith after the binding of such insurance and to deliver to Mortgagee new policies or memoranda for any insurance about to expire at least ten (10) days before such expiration, all such insurance to be first payable in case of loss to Mortgagee and to be written by such companies, on such terms, in such form and for such periods and amounts as Mortgagee shall from time to time approve, and Mortgagor hereby grants Mortgagee in the event of a default hereunder full power and authority as attorney irrevocable of Mortgagor to cancel or transfer such insurance, to retain any premiums or proceeds there from and to apply the same to the indebtedness secured hereby.

4.9 TAXES ON DEBT. To pay Mortgagee on demand the amount of any tax payable by Mortgagor which is attributable to the debt secured hereby, whether such tax is measured by the principal or the interest upon such debt or by Mortgagor's real estate mortgage investments, deposits or otherwise, excluding, however general income taxes levied against Mortgagor.

4.10 PERFECTION AND EXTENSION OF SECURITY INTEREST; COSTS. To take such actions as Mortgagee may reasonably request to perfect, maintain and extend the lien and security interest granted hereunder, including, without limitation the execution and delivery of financing statements, amendments to and extensions of financing statements and to pay all costs incurred by Mortgagee in connection with the perfection and the extension of Mortgagee's security interest hereunder, including without limitation recording and filing fees and reasonable attorney's fees.

4.11 COSTS IN CASE OF BANKRUPTCY OR OTHER PROCEEDINGS. If bankruptcy or other proceedings affecting the Mortgagor involve Mortgagee's interest under this Mortgage and Security agreement, including without limitation probate proceedings, condemnation proceedings, enforcement or other proceedings under any building, zoning, environmental or other law, ordinance or regulation affecting the Premises are commenced or threatened, to reimburse Mortgagee promptly, upon demand for all costs and expenses incurred by Mortgagee in protecting its interest with respect to such proceedings, including without limitation reasonable attorney's fees, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.12 COSTS IN CASE OF TERMINATED FORECLOSURE. If foreclosure proceedings are begun because of Mortgagor's default hereunder and are subsequently terminate prior to a foreclosure sale for any reason whatsoever, including but not limited to termination caused by bankruptcy proceedings affecting Mortgagor, redemption or agreement of the parties, to pay to Mortgagee promptly upon demand all costs and expenses incurred in connection with such proceedings, including without limitation reasonable attorney's fees, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

5. MORTGAGEE'S RIGHTS. Mortgagee shall have and Mortgagor hereby irrevocably authorizes and agrees to permit, to cooperate with and to facilitate the exercise of the following rights:

5.1 INSPECTION. To inspect the Collateral and Mortgagor's books and records with respect to the Collateral from time to time upon reasonable notice and without notice for reasonable cause.

5.2 PAYMENTS ON BORROWER'S BEHALF; EXPENSES. To make any payment required to be made by Mortgagor hereunder when due if the same has not been paid by Mortgagor, including but not limited to all taxes, charges, assessments and water rates, or any payments in lieu thereof, which may at any time be or become a lien on the on the Collateral. All such payments made by Mortgagee and the amount of any costs and expenses to which Mortgagee is entitled hereunder shall be reimbursed by Mortgagor to Mortgagee promptly upon demand and, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

5.3 DEALINGS WITH MORTGAGOR'S SUCCESSORS. To deal, without notice, with Mortgagor's successor or successors in interest with reference to this Mortgage and Security Agreement and the Obligations secured hereby in the same manner as with Mortgagor without in any way vitiating or discharging Mortgagor's liability hereunder or upon the Obligations. No sale of any Collateral and no forbearance on the part of Mortgagee or extension of the time for payment or performance of the Obligations or any other indulgence given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of Mortgagor, either in whole or in part, unless expressly so stated by Mortgagee in writing, and Mortgagor hereby expressly waives notice of any such forbearance, extension or other indulgence.

5.4 INSURANCE PROCEEDS. If the Collateral or any part thereof shall be damaged or destroyed by fire or other insured casualty, the amount recovered pursuant to any insurance coverage in effect with respect thereto are hereby assigned and shall be paid to Mortgagee and shall, at Mortgagee's election, be applied towards

reconstruction, repair or replacement of the Collateral, in which event, Mortgagee shall release such proceeds from time to time for such purposes, at such times and upon such terms and conditions as Mortgagee deems appropriate, or may be applied by Mortgagee in satisfaction of the Obligations then remaining unsatisfied, whether or not then due and in such order as Mortgagee determines, and for the foregoing purposes, Mortgagor hereby appoints Mortgagee its attorney-in-fact to negotiate, settle and collect any such proceeds (including without limitation the right to participate in any proceedings relating thereto) without, however, imposing on Mortgagee any obligation to do so.

5.5 EMINENT DOMAIN PROCEEDS. If the Collateral or any part thereof shall be taken by eminent domain or by other act of any public authority, any damages in connection therewith are hereby assigned and shall be paid to Mortgagee and shall, at Mortgagee's election, be applied towards reconstruction, repair or replacement of the Collateral, in which event, Mortgagee shall release such proceeds from time to time for such purposes, at such times and upon such terms and conditions as Mortgagee deems appropriate, or may be applied by Mortgagee in satisfaction of the Obligations then remaining outstanding, whether or not then due and in such order as Mortgagee determines and for the foregoing purposes, Mortgagor hereby appoints Mortgagee as its attorney-in-fact to negotiate, settle and collect such proceeds (including without limitation the right to participate in any proceedings relating thereto) without, however, imposing upon Mortgagee any obligation to do so.

6. <u>DEFAULT</u>. Without limitation, the occurrence of any of the following events shall constitute a default and shall, at Mortgagee's election and upon the expiration of applicable grace periods, if any, authorize and empower Mortgagee to exercise any of Mortgagee's rights and remedies hereunder and at law:

6.1 FAILURE TO OBSERVE OBLIGATIONS. Failure of Mortgagor to pay, perform and observe each of Mortgagor's Obligations, including without limitation failure to pay when due any sum required hereunder or secured hereby as originally scheduled or upon acceleration.

6.2 TRANSFER WITHOUT CONSENT. The sale, transfer, assignment or other disposition of or change by action of law or otherwise in title to the Collateral or any part thereof or in any equity, beneficial or other ownership interest in Borrower, including without limitation by action of law or merger of ownership entities, without first and in each instance having disclosed to Mortgagee the full particulars of any such transfer proposed and obtained from Mortgagee its written consent thereto.

6.3 FORECLOSURE OF OTHER LIENS. If foreclosure proceedings or other proceedings intend to enforce or realize upon any junior or senior mortgage or security interest covering all or any part of the Collateral, including without limitation action to foreclose or levy upon a tax lien, a sheriff's sale or any other proceedings whereby Mortgagor's ownership or right to possession or control of the Collateral may be threatened, should be commenced or instituted (provided that the commencement or institution of such proceedings with respect to an interest junior to Mortgagee's interest hereunder shall not constitute an event of default unless the same continues for more than thirty (30) days, without being withdrawn or otherwise terminated in Mortgagor's favor or shall actually deprive Mortgagor of ownership, possession or control of the Collateral).

6.4 BANKRUPTCY OR OTHER INSOLVENCY. The appointment of a receiver, conservator or similar officer of any of the property of; the making of an assignment for the benefit of creditors or other arrangement of similar import by; or the commencement of any proceedings under any Bankruptcy or Insolvency Law, now or hereafter enacted by or against Mortgagor or any guarantor or endorser of the Obligations.

7. LENDER'S REMEDIES. Upon the occurrence of an event of default and upon the expiration of applicable grace periods, if any, as aforesaid, Mortgagee shall have and may exercise the rights hereinafter set forth without limitation on any other rights which Mortgagee may possess, at law, by agreement or otherwise, all of Mortgagee's rights and remedies to be deemed cumulative and not exclusive:

7.1 ACCELERATION. At Mortgagor's election, to declare all monetary Obligations secured hereby immediately due and payable.

7.2 POWER OF SALE, REAL AND PERSONAL PROPERTY. This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all of the Obligations as hereinabove defined shall be kept and fully performed and that for any breach of the foregoing, Mortgagee shall have, in addition to any rights and remedies set forth herein and in any other instrument, document or undertaking entered into or given by Mortgagor or any other party as security for or in connection with the Obligations or available to Mortgagee as a matter of law, the STATUTORY POWER OF SALE. Mortgagee shall also have, as to personal property forming a part of the Collateral, all the rights and remedies of a Security Party under the Uniform Commercial Code, including the option to proceed as to real estate and personal property separately or to proceed with respect to both together under the law relating to foreclosure of real estate mortgages. If Mortgagee elects to proceed separately, Mortgagee may require Mortgagor to make such Collateral available to Mortgagee at a place to be designated by Mortgagee, and unless such Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Mortgagee will give Mortgagor reasonable notice of the time and place of any

public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made. All requirements for notice with respect to the sale or disposition of personal property shall be deemed met if such notice is mailed by certified mail, postage prepaid, to Mortgagor at the address herein below set forth, as the same may be from time to time changed in accordance herewith, or if no such address is set forth, to Mortgagor's last and usual place of business, at least five (5) days before the time of the sale or disposition. In the event the Mortgagee elects to sell real and personal property together, the giving of those notices required with respect to the foreclosure of a mortgage on real estate will be deemed to be a complete satisfaction of all notice requirements with respect to the sale of personal property.

7.3 POSSESSION. Whether or not Mortgagee has accelerated the Obligations or commenced foreclosure proceedings, Mortgagee shall have the right to enter upon and take exclusive possession of the Collateral and of all books, records and accounts relating thereto without notice and without being guilty of trespass, and if Mortgagor refuses to surrender possession, to invoke any and all legal remedies to obtain possession. Mortgagee may hold, lease, manage, operate or otherwise use or permit the use of the Collateral, itself or by other persona, firms or entities, in such manner for such time and upon such terms as Mortgagee may deem to be prudent and reasonable under the circumstances, and may make such repairs, alterations, additions and improvements and take any and all other action with reference thereto, from time to time as Mortgagee may deem necessary or desirable and any amounts thus expended and any other costs and expenses incurred in the care and management of the Collateral and in prosecuting or defending any action brought by or against Mortgagor or Mortgagee arising out of Mortgagee's possession, including without limitation reasonable attorney's fees, shall be reimbursed to Mortgagee, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

7.4 LIQUIDATED DAMAGES. If a foreclosure sale shall occur with respect to the Collateral, Mortgagee shall be entitled to retain an amount equal to one percent (1%) of the sale price in addition to all costs and expenses allowed by law and by this Mortgage and Security Agreement as liquidated damages.

7.5 SALE IN PARCELS. If a foreclosure sale shall occur, Mortgagee may, at its election, in the exercise of its power of sale, sell the Collateral in parcels, and said sales may be held from time to time in such order as the Mortgagee may determine, and the power shall not be exhausted until all of said Collateral not previously released shall have been sold.

7.6 INTEREST ON SURPLUS. If a foreclosure sale or other disposition of the collateral shall occur and if surplus proceeds shall be realized, Mortgagee shall not be required to pay interest thereon pending distribution.

8. SUBROGATION TO RIGHTS OF PRIOR LIENS. In addition to and not in limitation of any other right or remedy which Mortgagee may possess, Mortgagee is hereby subrogated to the full extent of the Obligations to any and all liens, claims and demands and to the rights of the owners and holders of the same with respect to the Collateral which are paid or satisfied in whole or in part from the proceeds of the Note, and such liens, claims and demands shall be, and each of them hereby is, preserved and transferred to and hereafter shall be deemed to be held by Mortgagee to the same extent that the same would have been preserved, transferred to Mortgagee by the prior holder thereof, notwithstanding the fact that a release, discharge, acknowledgment of satisfaction or other instrument of termination may have been delivered or recorded with respect thereto, provided that a discharge of this Mortgage shall be deemed to constitute also a discharge and release of any such item as to which Mortgagee holds title solely by virtue of its rights under this paragraph.

9. CAPTIONS, GENERAL APPLICATION OF TERMS. Captions and headings employed herein are intended for convenience of reference only and shall not be deemed to affect, modify or define in any way or otherwise be used to construe the meaning of the text. Words used in the singular shall be deemed to include the plural, and pronouns of any gender shall be deemed to include all genders as required by context.

10. INVALIDITY, SEPARABILITY, NEGATION OF USURY. The invalidity, illegality or unenforceability of any provision hereof or of any instrument, document or undertaking secured hereby or entered into in connection herewith or of any particular application thereof shall not be deemed to affect or impair in any fashion the validity, legality or enforceability of any other such provision or application and any instrument, document or undertaking containing such a provision shall continue in full force and effect and shall be interpreted so as to implement as nearly as possible the intention of the parties in the absence of such provision. In the event that any interest payment, fee, charge or other payment collected hereunder or under any instrument, document or undertaking secured hereby or entered into in connection herewith is determined, individually or in the aggregate, to be in violation of any applicable usury or other legal limitation or prohibition, such payment shall be deemed, but only to the extent of such violation, to constitute a payment against principal amount secured hereby, effective as of the date of such payment, and if such application to principal is not sufficient to rectify any such violation, shall be refunded by Mortgagee to Mortgagor upon request.

BOOK 658 PAGE 921

11. NOTICES. Any notice required or permitted to be given hereunder shall be deemed duly given if in writing and mailed, postage prepaid, certified mail, return receipt requested, if to Mortgagor, addressed to:

Keith Beauchamp
Wayne Beauchamp
89 Central Street
Manville, RI 02838

and, if to Mortgagee, addressed to:

Dean Co-operative Bank
21 Main Street
P.O. Box 307
Franklin, Massachusetts 02038

Mortgagor or Mortgagee may change their above set forth notice address only by written notice given as aforesaid.

12. WAIVER OF STATUTE OF LIMITATIONS. Mortgagor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Note or any other Obligations secured by this Mortgage.

13. WAIVER OF MARSHALLING. Notwithstanding the existence of any other security interests in the Collateral held by Mortgagee or by any other party, Mortgagee shall have the right to determine the order in which any or all of the Collateral shall be subjected to the remedies provided herein and the right to determine the order in which any or all portions of the Obligations secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Mortgagor, any Guarantor, any party who consents to this Mortgage and any party who now or hereafter acquires a security interest in the Collateral and who has actual or constructive notice hereof hereby waives and shall be deemed to have waived any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

EXECUTED as an INSTRUMENT under SEAL this 28th day of June, 2006.

Keith Beauchamp (signature)
Keith Beauchamp

Wayne Beauchamp (signature)
Wayne Beauchamp

BOOK 658 PAGE 022

STATE OF RHODE ISLAND
~~Commonwealth of Massachusetts~~

~~Norfolk, ss~~ PROVIDENCE COUNTY

On this 28th day of June, 2006 before me, the undersigned notary public, personally appeared Keith Beauchamp & Wayne Beauchamp, proved to me through satisfactory evidence of identification, being (check whichever applies):

[ X ] *Driver's License or other state or federal governmental document bearing a photographic image,*

[ ] *Oath or Affirmation of a credible witness known to me who knows the above signatory, or*

[ ] *My Own personal knowledge of the identity of the signatory,* to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

John T. Walsh, Jr.
Notary Public
My Comm. Exp:
7/18/2009

JOHN T. WALSH, JR.
STATE OF - MY - COMMISSION EXPIRES JULY 18, 2009 RHODE ISLAND
NOTARY PUBLIC

Fax:40133430031 Jul 13 2007 13:26 P.13



# EXHIBIT "A"

That certain lot or parcel of land, together with all buildings and improvements thereon, situated on the southerly side of Chapin Road in the Town of Narragansett, County of Washington, State of Rhode Island, said real estate being laid out and designated as Lot No. 14 (fourteen) on that certain recorded plat entitled "Section 1 North Gate in Narragansett, Rhode Island, L. Douglas Couchon et ux Dorothy L. – Owner Scale 1" = 50' J. A. Johnson Surveyor Dec 1969. "Drainage revisions, May 1971, A. J. Easterbrooks, C. E.

Subject to restrictions of record.

Property Address: 25 Raymond Drive
Narragansett, Rhode Island 02882

Tax Assessor's Plat 44 Lot 14

RECEIVED FOR RECORD
ON 6-30-06 AT 1:44 pm
WITNESS: CAROL ROBBINS, CMC
NARRAGANSETT TOWN CLERK

TERM PROMISSORY NOTE

# DEAN CO-OPERATIVE BANK

June 28, 2006

$344,000.00

**FOR VALUE RECEIVED**, the undersigned borrower(s) Keith Beauchamp and Wayne Beauchamp (herein collectively called "Borrower") of having a place of business at 89 Central Street, Providence County, Manville, RI 02038, promise(s) to pay to the order of Dean Co-Operative Bank, (herein called "Bank") at the office of the Bank located at 21 Main Street, Franklin, Massachusetts 02838 or at such other office as the holder may designate, Three Hundred Forty Four Thousand Dollars and 00/100 ($344,000.00) payable as follows:

1. a) **Payment Terms:** Commencing August 20, 2006 and on the same day of each month thereafter, monthly payments of interest only for the first twelve (12) months, then two hundred forty (240) payments of principal and interest payments each in the amount of $2,877.35 with principal amortization calculated on a twenty (20) year direct reduction schedule and interest calculated at the Interest Rate on the basis of a 360 day and paid on the basis of thirty days in each month; provided that if an interest rate adjustment occurs on any Change Date, Dean Co-operative Bank shall adjust the payment schedule as provided herein. Commencing with the first monthly payment after the occurrence of an interest rate adjustment on a Change Date, the Borrower will make equal, monthly principal and interest payments in an amount that will completely amortize the then outstanding principal balance at the rate of interest then in effect on such interest Change Date by the Final Payment Date (which shall be twenty five (25) years from the first payment due date) in accordance with the amortization schedule set forth herein, less the period of time that has elapsed since the closing. On the final date, July 20, 2027, amounts, including all principal, will be due and payable.

   b). **Amounts Borrowed:** The amounts borrowed under this Note, at any time, shall be up to the maximum principal amount of Three Hundred Forty Four ($344,000.00). The amount borrowed shall be borrowed in such amount pursuant to the Construction Loan Agreement executed by and between the Borrower and the Bank. Upon payment of any amounts borrowed pursuant to this note, the Borrower, upon consent of the Bank, may re-borrow a portion or the entire amount paid to the Bank under this Note in amounts to be determined solely by the Bank and pursuant to the Construction Loan Agreement.

2. **Interest:** The interest on the unpaid balance shall be payable on the dates provided above and is to be computed on the basis of a three hundred sixty 360-day year and paid on the basis of thirty days in each month:

   At a fixed rate of 8.00% per annum per year through, but not including the date July 20, 2011 (first "Change Date") which is five (5) years following the first payment due date and every five (5) years thereafter ("Change Date"). Interest on the outstanding principal balance shall be adjusted to a new fixed rate per year, for next five (5) years, on each Change Date. The new rate will equal the Federal Home Loan Bank of Boston 5 Year Regular Classic Advance Rate in effect plus Three Percent (3.00%) rounded to the nearest one eighth of one percent. In the event on a Change Date, the Federal Home Loan Bank of Boston 5 Year Regular Classic Rate is not available, then the Bank's Cost of Funds Rate will be used. If used herein, "Cost of Funds" means the fixed per annum rate of interest determined by the Bank, in good faith, as of any Change Date, in accordance with the Bank's customary practices for loans,



WB KB

EXHIBIT
B-2

based on the Bank's cost for obtaining funds with a maturity approximately equal to the period between such Change Date and the next occurring Change Date or the Maturity Date, whichever comes first. From such sources, funds may be selected by the Bank in its sole discretion. Interest on the outstanding principal balance shall be computed from the Change Date at the new rate through, but not including the next occurring Change Date or Maturity Date, whichever comes first. In the event that a Change Date falls on a Saturday, Sunday or legal holiday, the Change Date shall occur on the business day next following such Change Date.

3. **Additional Charges:** The Bank shall collect a late charge of three percent (5.00%) of any installment of principal, interest or any other amount due to the Bank which is not paid or reimbursed by the Borrower within fifteen (15) days following the due date thereof to defray the extra cost and expense involved in handling such delinquent payment and the increased risk of non-collection. The minimum late charge shall be $15.00. On default or after maturity or after judgment has been rendered on this Note, the unpaid principal balance shall, at the option of the Bank, bear interest at a rate which is four (4) percentage points per annum greater than that which would otherwise be applicable, which amounts shall each become an additional part of the unpaid balance. Borrower further promises to pay, which amounts shall become an additional part of the unpaid balance, all taxes levied or assessed upon the principal amount hereof against any holder of this Note and all costs, including without limitation attorneys' fees, costs relating to the appraisal and/or valuation of assets and all other costs and expenses incurred in the collection, protection, defense, administration, preservation or enforcement of all or part of this Note or any guaranty or endorsement of this Note or in any litigation or controversy arising from or connected with this Note or with respect to any action taken with regard to or against Borrower or any endorser, guarantor or surety of this Note (herein, a "Guarantor"). The payment of any additional charges provided for in this paragraph shall not be construed as an extension of the date when payment is due (at maturity or by acceleration). The Bank is hereby authorized (but not required) to charge all amounts due under this Note to any account of the Borrower with the Bank.

4. **Pre-Payment Privileges**: A pre-payment penalty will be assessed if the loan is paid off or modified prior to maturity or acceleration of principal payments by the borrowers. The penalty schedule is as follows:

a. 3% of note face if paid off within twelve months of the loan closing.
b. 2% of note face if paid off within twenty-four months of the loan closing.
c. 1% of note face if paid off within thirty-six months of the loan closing.

5. **Representations and Warranties**: The Borrower hereby represents and warrants that:

(a)if the Borrower is a corporation, partnership, trust or other legal entity, it is duly organized and validly existing; if a corporation, the Borrower is in good standing under the laws of its jurisdiction of organization; if a partnership, trust or other legal entity, the Borrower has filed in all locations required under the laws of each state in which it does business; (b) the Borrower is qualified to do business in every state in which the nature of its business conducted or the character of its property owned in such state would require such qualification; (c) the Borrower has the power to execute, deliver and perform this Note and to borrow from the Bank; (d) the execution, delivery and performance of this Note and any



WB KB

other agreements, documents or instruments evidencing, governing or securing this Note have been duly authorized, if the Borrower is a corporation, partnership, trust or other legal entity, will not violate the articles of organization, certificate of incorporation, partnership agreement, declaration of trust or other or similar organizational documents or the bylaws of the Borrower, if the Borrower is a corporation, partnership, trust or other legal entity, or any law, regulation or court order and will not result in a default under any agreement or indenture to which the Borrower is a party; (e) there is no suit or proceeding at law or in equity affecting the Borrower or any of its properties which, if adversely determined, would materially impair the assets, liabilities, financial condition or business of the Borrower; (f) the Borrower has filed all federal, state and local tax returns and other reports it is required to file by law and has paid all taxes and other charges that are due and payable; (g) the Borrower has furnished to the Bank such tax returns, financial statements and other information about the Borrower's financial condition as the Bank shall have requested, which tax returns, financial statements and other information fairly present the financial condition of the Borrower, and since the date of the last financial statements delivered to the Bank, there has been no material adverse change in the assets, liabilities, financial condition or business of the Borrower; and (h) the Borrower and any tenants have not given nor have they received any notice that: (i) there has been a release, or there is a threat of release, of toxic substances or hazardous wastes from any real property owned or operated by the Borrower; (ii) the Borrower or any tenants may be or is liable for the costs of cleaning up or responding to a release of any toxic substances or hazardous wastes; or (iii) any of such real property is subject to a lien for any liability arising from costs incurred in response to a release of toxic substances or hazardous wastes.

6. **Financial Information:** Notice of Default: For so long as this Note is outstanding and the Borrower has any liability hereunder, the Borrower shall deliver, and shall cause each Guarantor to deliver, to the Bank (a) within 90 days after the end of each fiscal year of the Borrower, if the Borrower is a corporation, partnership, trust or other legal entity, or within 90 days after the end of each calendar year, if the Borrower is a natural person, annual financial statements of the Borrower and each such Guarantor in form and substance satisfactory to the Bank; (b) within 30 days after the date each year when it is required to be filed, the Borrower's and each Guarantor's federal income tax return, with all schedules thereto, signed and dated, as filed with the Internal Revenue Service; (c) such other tax returns, financial statements and other information about the Borrower's and each Guarantor's financial condition as the Bank may require, in form and substance satisfactory to the Bank and at such intervals and with such frequency as the Bank may require; and (d) promptly on becoming aware of any Event of Default (as herein defined), notice to the Bank in writing and specifying the steps, if any, taken or to be taken to remedy such occurrence.

7. **Other Covenants**: Unless the Bank otherwise consents in writing:

(a) the Borrower shall not incur or permit to exist any lien, mortgage, charge or other encumbrance, against any of its property or assets, whether now owned or hereafter acquired, except liens in favor of the Bank or liens specifically permitted in writing by the Bank; (b) the Borrower shall not permit any other indebtedness incurred after the date hereof to be secured by any asset of the Borrower unless the Borrower secures this Note or causes this Note to be secured equally and ratably with all such other indebtedness secured, other than indebtedness, secured liens or encumbrances permitted pursuant to this Paragraph; (c) the Borrower shall not create or incur any indebtedness for borrowed money or issue or sell any obligations of the Borrower, except for liabilities to the Bank and indebtedness subordinated in



WB KB

payment and priority to all indebtedness of the Borrower to the Bank in writing and in form and substance satisfactory to the Bank; (d) the Borrower shall not sell, lease, pledge, transfer or otherwise dispose of all or any of its assets (other than the disposition of inventory in the ordinary course of its business) whether now owned or hereafter acquired, except as permitted or required hereby or by any agreement, document or instrument evidencing, governing or securing this Note; (e) the Borrower shall not purchase or otherwise acquire all or a material portion of the stock or assets of any other person, firm or corporation; (f) the Borrower shall not guaranty or otherwise become liable for the obligations of any other person, firm or corporation, except for the endorsement of instruments for deposit or collection in the ordinary course of business; (g) if it is a corporation, the Borrower shall not pay any dividends nor purchase any of its own shares nor alter or amend its capital structure nor make or consent to a material change in its stock ownership, or if it is a partnership, the Borrower shall not make any distribution to partners nor amend its partnership agreement in any manner; (h) the Borrower shall not change its name nor conduct its business under any trade name or style other than as set forth herein nor change the locations of its assets, its chief executive office, places of business, or if the Borrower is an individual with no place of business, its residence, from the address(es) disclosed to the Bank in connection herewith; (i) the Borrower shall continue to conduct its business as presently conducted and, if a corporation, partnership, trust or other legal entity, the Borrower shall preserve and keep in force its existence and shall not merge or consolidate with or into any other entity; (j) the Borrower shall keep, and shall cause each Guarantor to keep, all property of the Borrower and any Guarantor, including without limitation, all collateral securing the obligations of the Borrower or any Guarantor to the Bank, insured against risks of loss or damage by fire (including so-called extended coverage), theft and such other casualties as the Bank may require, all in such amounts, under such forms of policies, under such terms, for such periods and written by such companies or underwriters as the Bank may approve; (k) the Borrower shall, and shall cause each Guarantor to, maintain at all times a satisfactory payment record with the Bank and with all other creditors of the Borrower or each such Guarantor; (l) the Borrower shall pay, and cause each Guarantor to pay, all federal, state and local taxes required to be paid by Borrower and each such Guarantor when the same are due and payable; and (m) the Borrower shall comply with all federal, state, county and municipal laws, rules, ordinances and regulations application to it, its business or its property, including without limitation, those pertaining to or concerning the employment of labor, employee benefits, public health, safety and the environment.

8. **Events Of Default:** Each of the following shall constitute an "Event of Default" hereunder:

(a) failure of Borrower or any Guarantor to pay or perform any of its liabilities or obligations to Bank (whether under this Note or otherwise and whether now existing or hereafter arising) when due to be paid or performed; (b) default by the Borrower or by any Guarantor in the payment of any other indebtedness or obligation, or if any such other indebtedness or obligation shall be accelerated, or if there exists any event of default under any instrument, document or agreement evidencing, governing or securing such other indebtedness or obligation; (c) the Bank believes that any material adverse change in the assets, liabilities, financial condition or business of Borrower or any Guarantor has occurred since the date of any financial statements delivered to the Bank before or after the date hereof; (d) failure by the Borrower to comply with any covenant, term or condition contained in Paragraph 9 or 10 of this Note; (e) failure by Borrower to comply with any other term of, or the occurrence of a default under, this Note, or the failure by the Borrower or any Guarantor to comply with the terms of, or the occurrence of a default under, any mortgage, guaranty, loan or security agreement or other agreement or document which



WB KB

may now or hereafter evidence, govern or secure this Note or any guaranty or endorsement of this Note; (f) any representation or warranty made by the Borrower or any Guarantor herein, or in any mortgage, guaranty, loan or security agreement or other agreement or document which may now or hereafter evidence, govern or secure this Note or any guaranty or endorsement of this Note, proves at any time to be incorrect in any material respect; (g) the occurrence of any material loss, theft, substantial damage or destruction of or to any collateral which may now or hereafter secure this Note or any guaranty or endorsement of this Note or to a material portion of the property or assets of the Borrower or any Guarantor; (h) sale or other disposition of or encumbrance on any property of the Borrower or any Guarantor, except as permitted hereby or by any agreement, document or instrument evidencing, governing or securing this Note or any guaranty or endorsement of this Note; (i) the making or issuance of any levy, seizure, attachment, execution or similar process against any property of Borrower or any Guarantor; or (j) incompetency of, dissolution of, termination of the existence of, insolvency of, business failure of, application for or appointment of a receiver, trustee, conservator or liquidator of any part of the property of, assignment for the benefit of creditors by, or the commencement of any case or any other proceeding (whether for the purpose of liquidation or rehabilitation or otherwise) under any bankruptcy or insolvency laws or the death of, by or against Borrower or of, by, or against any Guarantor.

9. **Acceleration:** At any time, upon the occurrence of any Event of Default hereunder or if Bank shall in good faith believe that the prospect of payment or performance is impaired, at the option of the Bank, the entire unpaid balance, together with accrued interest thereon, shall become immediately due and payable without demand and without presentment or protest of any kind, all of which are hereby expressly waived by the Borrower and each Guarantor. Failure to exercise such option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

10. **Lien and Set Off:** The Borrower and each Guarantor hereby give the Bank a lien and right of set off for all of Borrower's and each Guarantor's liabilities and obligations upon and against all the deposits, credits, collateral and property of the Borrower and each Guarantor, now or hereafter in the possession, custody, safekeeping or control of the Bank or any entity under the control of Dean Co-operative Bank or in transit to any of them. At any time, without demand or notice, Bank may set off the same or any part thereof and apply the same to any liability or obligation of the Borrower or any Guarantor even though unmatured.

11. **Prejudgment Remedy Waiver:** The borrower and each guarantor hereby acknowledge that to the extent that the transaction of which this note is a part is a commercial transaction and, to the extent permitted by any state or federal law, borrower and each guarantor hereby waive the right any of them may have to prior notice of and a hearing on the right of any holder of this note to any remedy or combination of remedies that enables said holder, by way of attachment, foreign attachment, garnishment or replevin, to deprive borrower or any guarantor of, or affect the use, possession or enjoyment by borrower or any guarantor of, any of their property, at any time prior to judgment in any litigation instituted in connection with this note or the transaction of which this note is a part.

12. **Waiver of Trial By Jury:** The bank, borrower and each guarantor irrevocably waive all right to a trial by jury in any proceeding hereafter instituted by or against the bank, borrower or any guarantor in respect of this note or arising out of any instrument, document or agreement evidencing, governing or securing this note.



WJ KB

13. **Joint and Several Obligations; Miscellaneous:** This Note shall be the joint and several obligation of Borrower and each Guarantor, and each provision of this Note shall apply to each and all jointly and severally and to the property and the liabilities of each and all, who hereby waive presentment for payment, protest and notice of dishonor, and who hereby agree to any extension or delay in the time for payment or enforcement, to renewal of this Note and to any substitution or release of any collateral, all without any affect on their liabilities. Any delay on the part of the holder hereof in exercising any right hereunder or under any mortgage or security agreement which may secure this Note shall not operate as a waiver and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. The rights and remedies of the holder hereof shall be cumulative and not in the alternative, and shall include all rights and remedies granted herein, in any document evidencing, governing or securing this Note and under all applicable laws. The provisions of this Note are binding on the heirs, executors, administrators, assigns and successors of each and every Borrower and Guarantor and shall inure to the benefit of Bank, its successors and assigns. If any provision of this Note shall to any extent be held invalid or unenforceable, then only such provision shall be deemed ineffective and the remainder shall not be affected thereby.

14. **Acknowledgment of Copy:** Borrower acknowledges receipt of a copy of this Note, and attests that all advances will be used solely for the purpose specified to the Bank and that no part of such proceeds will be used, in whole or in part, for the purpose of purchasing or carrying any "margin stock" as such term is defined in Regulation U of the Board of Governors of the Federal Reserve System.

15. **Governing Law; Seal:** This Note shall be deemed executed as a sealed instrument and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Borrowers**

Witness: [signature]

Witness: [signature]

[signature]
Keith Beauchamp

[signature]
Wayne Beauchamp

BOOK 293 PAGE 692 MORTGAGE DEED 33257

of Nomar Realty Trust
for consideration paid, grant to Kaleb Realty & RTGP
of P O Box 1491 Providence RI 02903
with MORTGAGE COVENANTS, to secure the payment of $52,000.00 Dollars
in ______ years with interest at ______ per centum, per annum, payable semi-annually ______ as provided in a certain negotiable promissory note of even date herewith.

(Description, and incumbrances, if any)

That certain lot or parcel of land, together with all the buildings and improvements thereon situated, located in the town of Narragansett, County of Washington, State of Rhode Island, said Real Estate being laid out and delineated as Lot No. 14 (fourteen) on that certain recirded plat entitled "Section 1 North Gate in Narragansett, Rhode Island, L. Douglas Couchin ETUX Dorothy L. - Owner scale: 1" = 50' J. A. Johnson, Surveyor Dec. 1969. "Drainage revisions, May, 1971, A. J. Easterbrooks, C. E.".

For a minute and particular description of the premises herein described, reference is hereto made to the recorded plat of record which is recorded in the Town Clerk's records of the town of Narragansett, R.I. in Plat Book 6 at Page 102 and said recorded plat is made a part hereof.

RECEIVED FOR RECORD ON 4-28-93 AT 2:51 PM WITNESS: Mary M. Beck, CMC Narragansett Town Clerk

This mortgage is made upon the STATUTORY CONDITION and with the STATUTORY POWER OF SALE.

______ husband / wife of the mortgagor,

release to the mortgagee all right of curtesy / dower, and all other interest in the aforedescribed premises.

Witness our hand this 15th day of April 1993

In presence of:

Nomar Realty Trust
by [signature]
(PRINT OR TYPE NAME OF MORTGAGOR)

State of Rhode Island, Etc.
COUNTY OF Providence

In Providence on the 15th day of April, 1993
before me personally appeared J.V. Rose Trustee

to me known and known by me to be the party executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

(PRINT OR TYPE NAME AND ADDRESS OF MORTGAGEE)

[signature]
My Comm. Expires 6-19-93
Notary Public

EXHIBIT C

33632 BOOK 657 PAGE 035

ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that KALEB REALTY, a Rhode Island general partnership, the holder of a certain mortgage from NOMAR REALTY TRUST with offices located at PO Box 1491, Providence, RI 02903 in the original principal sum of Fifty Two Thousand ($52,000.00) Dollars, dated April 15, 1993, and recorded in Vol. 293 at Page 692 of the Land Evidence Records of the Town of Narragansett, Rhode Island, secured by property situated at 25 Raymond Drive, for the sum of Ten ($10.00) Dollars and other good and sufficient consideration the receipt whereof is hereby acknowledged, does hereby irrevocably assign and transfer said mortgage to RAYMOND 25 ASSOCIATES, LLC, a Rhode Island limited liability company with offices located at 23 Acorn Street, Providence, RI 02903. Said assignment authorizes the payments of any and all sums due thereunder, whether monthly or otherwise, to the said RAYMOND 25 ASSOCIATES, LLC until such time as all sums of principal and interest and all related costs of collection as provided for therein are paid.

WITNESS it's hand and seal this 25 day of July, 2005

KALEB REALTY

By: V M Rose Marugu Partner

STATE OF RHODE ISLAND
PROVIDENCE, Sc.

In Providence on this the 25th day of July, 2005, then personally appeared before me the above named V.M. Rose, general partner of Kaleb Realty, a Rhode Island general partnership, and he acknowledged the same by him executed to be his free act and deed and the free act and deed of Kaleb Realty.

Notary Public

Commission Expires 7/1/09

JOHN T. SHEEHAN JR.
34 BAYSIDE AVE
NEWPORT, RI 02840

RECEIVED FOR RECORD
ON 6-20-06 AT 10:34 Am
WITNESS: CAROL ROBBINS, CMC
NARRAGANSETT TOWN CLERK

EXHIBIT D

32149 BOOK 652 PAGE 747

STATUTORY FORM OF FORECLOSURE DEED
UNDER POWER OF SALE IN MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that RAYMOND 25 ASSOCIATES, LLC, a Rhode Island limited liability company, the holder of a certain mortgage given by NOMAR REALTY TRUST of Providence, Rhode Island and dated April 15, 1993 and recorded in Volume 293 at Page 692 of the Land Evidence Records of the Town of Narragansett, County of Washington, State of Rhode Island, by the power conferred by said mortgage and by every other power it thereunto enabling, for $300,000.00.00 paid, grants to RAYMOND 25 ASSOCIATES, LLC, c/o Harold T. Panciera, Jr., a Rhode island limited liability company with principal offices located at 23 Acorn Street, Providence, Rhode Island 02903, the premises conveyed by said mortgage, viz:

That certain lot or parcel of land, together with all the buildings and improvements thereon situated, located in the Town of Narragansett, County of Washington, State of Rhode Island, said real estate being laid out and delineated as Lot No. 14 (fourteen) on that certain recorded plat entitled, "Section 1 North Gate in Narragansett, Rhode Island, L. Douglas Couchin, et ux, Dorothy L. - Owner Scale: 1" = 50' J. A. Johnson, Surveyor Dec. 1969. "Drainage revisions, May, 1971, A. J. Easterbrooks, C.E."

For a minute and particular description of the premises herein described, reference is hereby made to the recorded plat of record which is recorded in the Town Clerk's records of the Town of Narragansett, R.I. in Plat Book 6 at Page 102 and said recorded plat is made a part hereof.

THE TRANSFER OF THE ABOVE DESCRIBED PREMISES WAS THE RESULT OF A FORECLOSURE AND THERE WERE NO NET PROCEEDS SUBJECT TO THE WITHHOLDING PROVISIONS OF RIGL 44-30-71.3. NO STAMPS REQUIRED

IN WITNESS WHEREOF, the undersigned has caused these presents to be executed this 10th day of April, 2006.

RAYMOND 25 ASSOCIATES

By: Harold Panciera
HAROLD T. PANCIERA, JR.

EXHIBIT
tabbles
E

BOOK 652 PAGE 749

AFFIDAVIT OF SALE UNDER
POWER OF SALE IN MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that I, Raymond 25 Associates, a Rhode Island limited liability company, by Harold T. Panciera, Jr., the Manager, the holder of a certain real estate mortgage assigned to it from Kaleb Realty a Rhode Island general partnership with offices located at 55 Brownell Street, Warren, Rhode Island 02885, on solemn oath make affidavit and say that there having been a default in the performance of the conditions contained in said mortgage deed, viz: the payment of both principal and interest mentioned in said mortgage deed above referred to, the said principal and interest not having been at the time when it became payable or at any time thereafter, paid or tendered to any person authorized to receive the same, and that pursuant to the provisions of said mortgage deed and to the requirements of law, I caused to be mailed a written notice of the time and the place of the sale to the mortgagor at its last known address, by certified mail, return receipt requested, at least twenty (20) days prior to the publishing of said notice and I caused a notice to be published once a week for at least three successive weeks next preceding said sale in the Narragansett Times, a public newspaper, published in the County of Washington, to wit, on December 28, 2005, January 4, 2006, January 11, 2006 and January 18, 2006, of which the attached Exhibit A is a true copy.

And I further depose and say that on the 19th day of January, 2006 at 2:00 o'clock p.m. on the said mortgaged premises in said Town of Narragansett, Rhode Island, pursuant to said notice and in accordance with the terms of said mortgage, the mortgagee offered the said premises for sale at public auction by Shechtman & Associates, a duly licensed auctioneer, in the City of Cranston, and that the same were then and there sold to Raymond 25 Associates, LLC, 23 Acorn Street, Providence, RI 02903 for Three Hundred Thousand ($300,000.00) Dollars which amount was bid by the said Raymond 25 Associates, LLC, and was the highest bid therefore at said auction sale.

WITNESS my hand and seal this 10 day of April, 2006.

RAYMOND 25 ASSOCIATES, LLC

By: [signature]

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, on this 10 day of April, 2006, before me personally appeared Harold T. Panciera, Jr., to me known and known by me to be the duly authorized Manager of Raymond 25 Associates, LLC, a Rhode Island limited liability company, the party executing this instrument and he acknowledged said instrument by him so executed, to be his free act and deed and the free act and deed of the limited liability company.

[signature]

NOTARY PUBLIC
My Commission Expires: 7/1/07
John Shannon

EXHIBIT F

BOOK 652 PAGE 750

**AFFIDAVIT OF NOTICE**

I, John T. Sheehan, Jr., first being duly sworn on oath do depose and state as follows:

1. At least twenty (20) days prior to the publication of the first advertisement, I forwarded to the Mortgagor written notice of the time and place of sale by certified mail, return receipt requested at the address of the real estate, at the address set forth in the mortgage, and as set forth with the Tax Assessor's Office of the Town of Narragansett, Rhode Island.

John T. Sheehan, Jr.

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn before me this 18 day of April, 2006.

Notary Public

Sheryll D. Houston, Notary Public
My Commission Expires June

EXHIBIT
G

Walsh, Boyle & Assoc. Fax:4013343093 Jun 8 2006 12:16 P.37

BOOK 652 PAGE 751

EXHIBIT A

25 Raymond Drive
Narragansett, RI

## Legal Notices

FORECLOSURE NOTICE

25 Raymond Drive
Narragansett, Rhode Island

Will be sold at public auction on January 19, 2006 at 2:00 p.m. local time, on the premises hereinafter described, by virtue of a power of sale contained in the Mortgage Deed made and executed by Kaleb Realty, a RIGP which Mortgage is dated April 15, 1993 and recorded in the Records of Land Evidence for the Town of Narragansett, Rhode Island in Book 293 at Page 692, the conditions of said mortgage having been broken.

All that certain lot or parcel of land with the buildings and improvements thereon situated in the Town of Narragansett, County of Washington, State of Rhode Island, [illegible] in the certain Mortgage Deed recorded in Book 293 at Page 692 of the Land Evidence Records of the Town of Narragansett.

Being designated as Plat NO Lot 44 14 on the Tax Assessor's Records of said Town of Narragansett, with an address of 25 Raymond Drive, Narragansett, Rhode Island.

Said premises will be sold together with all buildings and improvement thereon situated, if any, and subject to any and all superior or prior restrictions and/or covenants, or mortgages of record which may constitute valid prior liens or encumbrances on the premises.

Terms of sale shall include a down payment of Five Thousand ($5,000.00) Dollars upon the acceptance of the successful bid, payable in cash or bank or certified check and such other terms and conditions as shall be announced immediately prior to the sale.

By order of the Mortgagee which gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

John T. Sheehan, Jr.
Attorney for the Holder of the Mortgage
34 Bayside Avenue
Newport, Rhode Island 02840
401-255-7367

Visit us on the Web
RICentral.com

RECEIVED FOR RECORD
ON 6-12-06 AT 10:17
WITNESS: CAROL ROBBINS, CMC
NARRAGANSETT TOWN CLERK

EXHIBIT
H

AFFIDAVIT

I, John T. Sheehan, Jr., upon oath do depose and aver:

1. That I am a practicing attorney licensed by the State of Rhode Island with offices located at 34 Bayside Avenue, Newport, Rhode Island.

2. That I conducted a foreclosure auction against certain real estate premises designated as 25 Raymond Drive, Narragansett, Rhode Island on January 19, 2006 pursuant to the statutory provisions of the Rhode Island general laws.

3. Pursuant to the statutory provisions, notice was sent to:

A. Internal Revenue Service
B. Nomar Realty Trust
C. JEV Financial Corp..
D. Borland Realty, Inc
E. Kaleb Realty

4. All notices sent were claimed and received by the persons or entities to which they were addressed.

5. That appropriate affidavits of notice have been affixed to the mortgagee's deed of conveyance recorded subsequent to the foreclosure sale.

6. No party in interest has contacted the office since the foreclosure sale.

John T. Sheehan, Jr.

Subscribed and sworn before me this 28th day of June, 2006.

Richard H. James
Notary Public exp. 6/09

EXHIBIT
I