**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA )

VS. ) C.A. NO. 07-211S

KEITH BEAUCHAMP, WAYNE BEAUCHAMP)
and DEAN COOPERATIVE BANK )

**PRE-TRIAL CONFERENCE STATEMENT OF DEFENDANTS**
***KEITH BEAUCHAMP, WAYNE BEAUCHAMP***
***and DEAN COOPERATIVE BANK***

The defendants, *KEITH BEAUCHAMP, WAYNE BEAUCHAMP and DEAN COOPERATIVE BANK*, hereby submit the following Pre-Trial Conference Statement pursuant to the Court's Notice dated August 8, 2007.

The defendants have asserted counterclaims in this tax lien case seeking to clear their title of the lien asserted. The counterclaims are based upon theories of declaratory judgment, equitable subrogation and subordination, quiet title and marshalling. Statutory defenses have been raised, including those afforded by 26 USC 623(i)(2) and 26 USC 7425(d)(1). The defenses and counterclaims are based on the following:

## I. THE PARTIES

The defendants, Keith and Wayne Beauchamp, are record holders in fee simple of the subject premises pursuant to the deed from 25 Raymond Associates, LLC, dated June 30, 2006.

The defendant Dean Bank is the current holder of a purchase money mortgage secured by the subject premises in the amount of $344,000.00 recorded at Book 658, p.911, of the Land Evidence Records of the Town of Narragansett, Rhode Island.

## II. BACKGROUND

The funds provided by the defendants were applied to the purchase of the subject property from 25 Raymond Associates, the holder of a mortgage dated April 15, 1993, which said mortgage was duly foreclosed by said mortgagee under Power of Sale on or about January 19, 2006.

Prior to obtaining their interests in the subject property, the defendants' attorneys obtained customary confirmation from the attorneys for the grantors, Raymond 25 Associates, LLC, that the plaintiff was duly notified and that the plaintiff failed to contact the grantor or to redeem within 120 days following the foreclosure as required by law.

As a result thereof, the subsequent transfers of interest to the defendants were free and clear of the tax lien now asserted by the plaintiff.

The funds delivered by the defendants at closing in June of 2006 actually funded the purchase of the property at fair market value from the owner in fact, Raymond 25, and benefited the original, pre-existing mortgagee—Kaleb Realty RIGP and/or Nomar Realty Trust and its assignee, the grantor, Raymond 25. Now, absent the defendants' own direct and affirmative intervention and without immediate Court action on this Complaint for Declaratory Judgment, the defendants will be unable to correct the resulting cloud on title created by the recorded appearance of the legally discharged IRS lien now maintained and asserted by the plaintiff.

## A. Equitable Subrogation and Subordination and Priority of Purchase Money Interests

### 1. The Theory of Subrogation

Federal law regarding tax lien matters states:

> [w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 and 6324. 25 U.S.C.S. §6323(i)(2)

The law with regard to subrogation in Rhode Island has been defined as the "substitution" of one person in the place of another with reference to a lawful claim or right and is a device adopted by equity to compel the ultimate discharge of an obligation by the party who, in good conscience ought to pay it. U.S. Inv. and Dev. v. Dept. of Human Services, 606 A.2d 1314, 1317(R.I. 1992)

Subrogation is either legal or conventional. Hospital Service Corp. of Rhode Island v. Pennsylvania Insurance Co., 227 A.2d 105, 109 (R.I. 1967) Legal subrogation arises where a person under a secondary obligation to pay a debt does so and, thereupon, becomes subrogated to any right which the creditor may have had, particularly in the nature of security, as against the primary obligor. Industrial Trust Company v. Hanley, 53 R.I. 180, 181 (1933) Conventional subrogation is based upon an agreement and exists where a person, under no obligation originally, undertakes by agreement with an obligor to pay his debt with the understanding and agreement that he will have the same or equivalent security to that held by the original creditor. Id. However, because subrogation is a restitutionary doctrine founded in equity, no contract is required for subrogation rights to accrue. U.S. Inv. and Dev., supra, at 1318.

In applying notions of subrogation, equity and justice are primary concerns. Conaty v. Guaranty Loan Co., 62 R.I. 470, 478 (1939)

## 2. Subrogation in Tax Lien Matters

Equitable subrogation has been applied in Federal Court actions under circumstances similar to the present case.

In the case of Han v. United States, 944 F.2d 526 (9th Cir. 1991), the plaintiffs successfully argued that they were equitably subrogated to the priority position of a lender whose existing loan they had paid off and discharged when they purchased the property. The IRS was, accordingly, precluded from foreclosing on the property. Id at 527.

The facts in Han bear repeating. The plaintiffs purchased a house from Yue Khang Lok. Because Lok failed to pay $2.3million in income taxes for 1985-1987, the IRS filed a lien against the property. Although the lien was properly recorded before closing, the plaintiffs were unaware of it until after escrow closed. Id. The plaintiffs' real estate agent knew of the tax lien, but Lok had represented to the real estate agent that the IRS lien would be paid off before the close of escrow. Thus, the real estate agent did not advise the plaintiffs of this problem. Id at 527-28.

At the time of sale, World Savings and Loan Association held a first trust deed for $367,000.00 which was recorded prior to the tax lien recordation. Id at 528. This loan was paid off in escrow. After escrow closed, the IRS levied against the property, putting the IRS in constructive possession of the property. Id. In an attempt to stave off the foreclosure sale and to protect their investment, the plaintiffs filed a complaint for wrongful levy and for injunctive relief against the IRS. Id at 527.

The Hans argued that they were entitled to be "equitably subrogated" to World Savings' position as first place lienholder because they paid and discharged World Savings' first trust deed. Under the doctrine of equitable subrogation, the plaintiffs sought to stand in the shoes of World Savings and retain the same priority that World Savings had on its trust deed. The District Court rejected the equitable subrogation argument, finding that the plaintiffs had imputed knowledge of the tax lien because of the real estate agent's actual knowledge. Id at 528.

On appeal, the Ninth Circuit noted that equitable subrogation is appropriate where:

(1) Payment [was] made by the subrogee to protect his own interests

(2) The subrogee [has] not acted as a volunteer

(3) The debt paid [was] one for which the subrogee was not primarily liable

(4) The entire debt [has] been paid

(5) Subrogation [would] not work any injustice to the rights of others, Id at 529 (cites omitted)

The Court acknowledged that equitable subrogation is denied to a party who has knowledge of an existing encumbrance but not to a party who *has only constructive notice* of an existing encumbrance. Id at 530. The Court held that the plaintiffs had only constructive knowledge of the encumbrance and not actual notice of the encumbrance and, thus, equitable subrogation *did* apply. In reaching this conclusion, the Court stated that "[I]t is well settled that recording gives only constructive notice, not actual notice." Id. See also Industrial Trust Company v. Hanley, 53 R.I. 180, 182 (R.I. 1933) (Equitable subrogation applied regardless of the fact that the subrogor had failed to find the junior

encumbrance upon the record.) Accordingly, the Court reversed the grant of summary judgment in favor of the IRS and held that the plaintiffs were equitably subrogated to all liens and encumbrances recorded prior to the tax lien in question which were paid from the proceeds of the sale. Han at 531.

### 3. Precedent from the District of Rhode Island

In Potter v. United States, 111 F.Supp. 585 (D.R.I. 1953), the Court applied Rhode Island law on equitable subrogation in circumstances similar to the instant case. On June 29, 1949, Harry Crawshaw's Grill executed a promissory note to Margaret Crawshaw (hereinafter "Margaret") in the sum of $11,000.00. To secure payment of this Note, the corporation executed a mortgage on certain restaurant equipment. This mortgage was duly recorded in the Town Clerk's office in East Providence. Id at 586. After the mortgage was filed, the IRS recorded a notice of tax lien against Harry Crawshaw's Grill. The corporation defaulted, and Margaret instituted foreclosure proceedings against the property. Id at 586. In order to stop the foreclosure proceedings, the corporation approached the plaintiff to request funds sufficient to pay off the balance due to Margaret. The plaintiff, being completely ignorant of the existence of the tax lien filed by the IRS, advanced to the corporation the sum required to pay off the balance due to Margaret. The corporation then delivered a note to the plaintiff which was secured by a mortgage executed to the plaintiff on the same property which had previously served as security for the earlier Note. This mortgage was then duly recorded. Id at 587.

Upon default, the plaintiff commenced foreclosure proceedings against the mortgaged property. On the same date, the IRS, under a duly issued warrant based upon the lien, seized the personal property for non-payment of taxes. Id. The plaintiff then commenced litigation.

To establish the priority of his claim over that the IRS, the plaintiff relied on the theory of conventional subrogation. Priority was claimed to the extent of the amount advanced by the plaintiff to discharge the previous mortgage on the corporation's personal property. This was the same property upon which the IRS had filed its lien, unknown to the plaintiff. The plaintiff contended that the IRS was in no worse position than it was before the discharge of the old mortgage and that the plaintiff, having advanced the funds to discharge that mortgage and having become the new mortgagee of the property, was subrogated to the rights of the previous mortgagee. Id. The IRS argued that because its lien was placed on the mortgaged property *before* the plaintiff's mortgage was executed, its claim had priority over that of the plaintiff. Id at 587-88.

The Court stated Rhode Island subrogation law as follows:

> A person under no obligation who undertakes by agreement with an obligor to pay the latter's debt with the understanding that he will have the same or equivalent security to that held by the original creditor, and subsequently pays that obligation, will be subrogated to the rights of the original creditor, provided that the entire transaction placed no innocent third party in a position more unfavorable than that in which he originally stood ...*Constructive notice of the junior lien is insufficient to defeat his right of subrogation, and his failure to find the junior encumbrance on the record will not be sufficient reason to deny him relief in equity*...Mistake is considered a proper ground for relief in equity. Id at 588 (emphasis added).

Thus, equity will regard the substance rather than the form of the transaction and will treat the new mortgagee as the equitable assignee of the original mortgagee's rights, in the absence of intervening equities. Id.

The Court stated that subrogation under such circumstances places the government in no worse position than it was in before the discharge of the old mortgage and that it is not entitled to be unjustly enriched by the plaintiff's mistake. Id at 589. Therefore, the Court held that the plaintiff was entitled to priority over the IRS. Id. See also Dietrich Industries v. United States, 988 F.2d 568 (5th Cir. 1993) (The purchaser of encumbered property who discharges a senior lien as part of the purchase price is entitled under the principles of equitable subrogation to subrogate to the position of priority over a junior (IRS tax lien) recorded lien).

**B. Quiet Title and Marshalling**

The defendants seek to quiet title pursuant to Rhode Island General Laws §34-16-1 and also to invoke the equitable claim of "marshalling". By this last theory, the defendants assert that the IRS should pursue other identifiable assets (including those of Ross, Kaleb Realty, Nomar Realty Trust and/or Raymond 25) in place of seeking recovery against the interests of the defendants, who were bona fide purchasers. See Charles Construction Co., Inc. vs. Leisure Resources, Inc., 1 Mass. App. Ct.755, 760 (1974) and In Re: Paulding, Inc., 76 B.R. 78 (Bkrptcy D. Mass. 1987).

**D. Statutory Discharge of Lien**

The counterclaimants allege that the IRS lien has been statutorily discharged. 26 U.S.C.S §7425(b) states, in pertinent part, as follows:

**(B) Other Sales**

> ...sale of property on which the United States has or claims a lien...made pursuant to an instrument creating a lien on such property or...pursuant to a nonjudicial sale under a statutory lien on property....(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States as may be provided with respect to such matters by the local law of the place where such property is situated if...(c) Notice of sale is given in the manner prescribed in subsection (c)(1).

Subsection (c)(1) states:

> **(1) Notice of Sale** Notice of sale to which subsection (b) applies shall be given...in writing by registered or certified mail...not less than 25 days prior to such sale, to the secretary.

Subsection (D)(1) states:

> **(1) Right to Redeem**
> In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the secretary may redeem such property within the period 120 days from the date of such sale or the period allowable for redemption under local law, which is longer.

Accordingly, in order to prove their defense of statutory discharge, the defendants must prove the following elements:

(1) That an "instrument" created a lien on the property or that a non-judicial sale ocurred.

(2) That notice of foreclosure was given to the United States

(3) That such notice was in writing

(4) That such notice was sent by registered or certified mail

(5) That notice was sent not less than 25 days prior to sale

(6) That the Untied States failed to redeem the property within 120 days from the date of sale.

The defendants allege that the subject IRS lien was recorded on November 11, 2004, *after* the mortgage "instrument" of 25 Raymond Associates was recorded on or about April 15, 1993. The pre-existing mortgage of 25 Raymond Associates was foreclosed by a non-judicial sale on January 19, 2007. The foreclosure occurred after timely written notice by registered mail was forwarded to the plaintiff. Despite such notice, the plaintiff never redeemed within the statutory 120 day period following foreclosure. The IRS lien is, accordingly, barred and unenforceable by law and in equity.

Respectfully submitted,

KEITH BEAUCHAMP, WAYNE BEAUCHAMP
and DEAN COOPERATIVE BANK
By their Attorneys,

*/S/ JAMES B. MARUSAK*

JAMES B. MARUSAK
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
401-274-6644 fax: 401-331-9304

CERTIFICATION

I hereby certify that copies of the within PRE-TRIAL CONFERENCE STATEMENT were sent by United States first-class mail, postage prepaid, and/or hand delivered and/or by facsimile, to **Robert Clark Corrente and Michael P. Iannotti, U.S. Attorney's Office**, District of rhode Island, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903; and **Robert J. Kovacev, Esquire**, electronically, on the 11th day of September, 2007.

*/S/ JAMES P. MARUSAK*