**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | C.A. NO. 07-211S |
| | ) | |
| KEITH BEAUCHAMP, WAYNE BEAUCHAMP | ) | |
| and DEAN COOPERATIVE BANK | ) | |

**DEFENDANTS, KEITH BEAUCHAMP, WAYNE BEAUCHAMP AND DEAN COOPERATIVE BANK'S MOTION FOR SUMMARY JUDGMENT**

Defendants Keith Beauchamp, Wayne Beauchamp and Dean Cooperative Bank (hereinafter, collectively, "Defendants"), in the above-captioned matter and pursuant to Federal Rules of Civil Procedure 56(a) and (b), hereby move this Honorable Court for summary judgment in their favor, dismissing all claims against them and granting all relief sought by said Defendants. As grounds for the instant motion, Defendants rely upon and incorporate the accompanying memorandum of law.

**WHEREFORE,** Defendants respectfully request this Court grant their motion.

Respectfully submitted,
Defendants Keith Beauchamp, Wayne Beauchamp and Dean Cooperative Bank
By their Attorneys,

/S/ JAMES P. MARUSAK
____________________________

JAMES P. MARUSAK
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
401-274-6644
fax: 401-331-9304
jpm@gsm-law.com

CERTIFICATION

I hereby certify that on the _10th_ day of _September_, 2008, a true copy of the foregoing document was served upon each attorney of record, or pro se litigant, listed below by electronic filing of this document with the US District Court for the District of Rhode Island.

Robert J. Kovacev, Trial Attorney
US Department of Justice – Tax Division
PO Box 55
Ben Franklin Station
Washington, DC 20044
RobertJ.Kovacev@usdoj.gov

/S/ James P. Marusak

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | C.A. NO. 07-211S |
| | ) | |
| KEITH BEAUCHAMP, WAYNE BEAUCHAMP | ) | |
| and DEAN COOPERATIVE BANK | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, KEITH BEAUCHAMP, WAYNE BEAUCHAMP AND DEAN COOPERATIVE BANK'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants in the above-captioned matter and pursuant to R.C.P. 56(a) and (b) hereby submit their memorandum of law in support of their motion for summary judgment. As set forth in greater detail below, the lien of the IRS on the property held by Keith and Wayne Beauchamp and subject to the mortgage held by Dean Cooperative Bank, is null and void. To the extent that the lien ever encumbered the title to the property, any interest of the United States as evidenced by that lien was subordinate to that of the current owners and mortgagee and was otherwise properly discharged and foreclosed.

## II. STANDARD OF REVIEW

Summary judgment is intended to provide a fair and efficient means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways. Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992). It serves as an appropriate disposition where the record shows that there is no genuine issue or material fact in dispute and that the moving party is entitled to judgment as a matter or law. Fed.R.Civ.P. 56(c).

"Summary judgment should be granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Scully Signal Company v. Joyal, 881 F. Supp. 727, 738 (D.R.I. 1995) (citing Fed. R. Civ. P. 56(c)) (other citations omitted). To overcome a motion for summary judgment under Rule 56(c), the nonmoving party must present facts that show that there is a genuine issue for trial. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "[T]he evidence presented by the nonmoving party cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Id. (internal quotation omitted).

## III. ARGUMENT

### a. THE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Government listed "Borland Realty" as the party subject to its tax lien. Accordingly, the Government now contends that "[the] transfer of record title on the 25 Raymond Drive property *from Borland Realty to Raymond 25 Associates* was made subject to the United States' tax liens." Plaintiff's Complaint, ¶ 14. (emphasis added). If this is the basis of its case, then the Government's case must fail as a matter of law. In fact, the mortgage which was ultimately foreclosed was transferred by *Kaleb Realty* to Raymond. Kaleb was never named in any of the IRS liens. Borland, a junior interest holder, never conveyed an interest to Raymond who foreclosed on the Kaleb mortgage, which was superior to Borland's interest.

A mortgagor is deemed to be the owner of land as against everyone but the mortgagee. Pereira v. Waxman, 74 R.I. 303, 304, 60 A.2d 484 (1948). The law in Rhode Island is that a

purchaser at a foreclosure sale takes title not as the grantee of the mortgagee, but rather as the grantee of the mortgagor. Rathbun v. Allen, 63 R.I. 109, 7 A.2d 273, 274 (1939).

*Title did not pass from Borland Realty to Raymond 25 Associates.* Instead, Borland took a quitclaim to the property from the mortgagor, Nomar, at the time of the quitclaim, the Kaleb mortgage was prior in time and interest to any interest of Borland. Any attempted transfer of an interest from Nomar to Borland was clearly subject to the pre-existing mortgage granted to Kaleb. Borland took nothing more than its grantor, Nomar, the original mortgagor, had to offer. Borland accordingly, if deemed a subsequent owner, held title valid against "everyone but the mortgagee". See, Pereira, id.; see also, Doyle v. Mellen, 15 R.I. 523, 8 A. 709 (1882) (a mortgagor and his assigns hold the property subject to the mortgagee's rights).

From the start of its interest, Borland took a lesser title to the property, contingent upon the timely payment of the mortgage obligation to Kaleb. Borland was not the mortgagor, and Borland was never substituted for Nomar with the approval of the mortgagee. Kaleb transferred its rights in the property, and to payment, to Raymond 25 Associates, who commenced foreclosure proceedings for non-payment against Nomar, the mortgagor, thus extinguishing the junior interest of Borland and foreclosing the right of redemption of Nomar. Contrary to the Plaintiff's assertions, Borland never transferred title to Raymond 25 Associates. Instead, the prior and superior rights, title and interest of both Kaleb as the mortgagee and Nomar as the mortgagor passed to Raymond 25 Associates upon assignment and foreclosure. Neither Nomar, nor Kaleb, despite holding interests of record, were ever made the subject of an IRS lien. The Plaintiff's Complaint must fail as a matter of law accordingly.

**b. THE IRS LIEN ON THE PROPERTY IS OF NO LEGAL FORCE OR EFFECT**

The sole basis of the Government's contention that it is entitled to foreclose on the Property appears to be that the property was once owned by a corporate entity, Borland, which allegedly functioned as the "alter ego" of Jeffrey Rose, the primary taxpayer. Whether or not this is true is of no consequence. In support of its contention, the Government makes the sweeping statement that, "[i]n order to foreclose those tax liens, all the United States must establish is that Rose had, at the time those assessments were made, an interest in the property for which the foreclosure is sought". <u>Plaintiffs Rule 16(c) Statement</u>, p. 2 ¶ 3. Tellingly, the Government does not cite any authority for this sweeping proposition and essentially ignores the multiple instances in which this proposition is refuted.

The Government mistakenly alleges that a transfer of record title from "Borland Realty to Raymond 25 Associates, LLC" took place, and that Raymond's foreclosure deed was therefore subject to the IRS liens filed in November of 2004. The Government further alleges that the subsequent *bona fide* sale and conveyance of the Property from Raymond 25 Associates, LLC to the Beauchamps was also accordingly subject to the IRS liens filed in November of 2004. Although not named in any lien, the Government appears to claim that the mortgage interest held by Kaleb Realty was somehow invalid, and that Kaleb was also a hidden nominee of Jeffrey Rose, thereby depriving Kaleb Realty of any priority over the IRS Tax Liens in the first instance. Since there is no genuine issue of material fact, for the reasons set forth below, Defendants are entitled to judgment as a matter of law as to these allegations.

### i. <u>Kaleb Realty And Its Privies Were Not Afforded Due Process</u>

Four years after asserting its liens against other entities, the Government now appears to infer that Kaleb Realty was a hidden nominee of Jeffrey Rose, that the mortgage between Nomar Realty and Kaleb was not supported by adequate consideration, or was fraudulently made. In

order to properly assert its liens, the IRS, pursuant to 26 U.S.C. § 6320, is required to "notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323". 26 U.S.C. § 6320 (a)(1). The "person described in section 6321" is "any person liable to pay any tax" who "neglects or refuses to pay ... after demand". 26 U.S.C. § 6321.

On the face of the liens the IRS now seeks to enforce, the IRS only names Jeffrey Rose and Borland Realty. However, the Government now appears to contend that Kaleb and Nomar were also hidden nominees or alter egos of Jeffrey Rose. If this were indeed the IRS's theory at the time of filing of its liens, then Kaleb and Nomar were also "person[s] liable to pay any tax" who "neglect[ed] or refuse[d] to pay". Neither of these entities was ever named on the face of any purported lien, nor were they afforded due process in compliance with section 6320. Since the IRS failed to name Kaleb or Nomar in any lien, the interests of *bona fide* purchasers taking through these entities never became subject to the liens that were filed.

Clearly 26 U.S.C. §§ 6321 and 6323 required the IRS Commissioner to provide a form which would disclose the names of the taxpayers with reasonable preciseness. *See*, F.P. Baugh v. Little Lake Lumber Co., 297 F.2d 692, 695 (9th Cir. 1961) (cert. denied, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962) (*described in greater detail, infra*; holding that interests in partnership property of a partnership and other partners thereto who were not identified on the face of a federal tax lien were not affected by the lien).

Since the IRS failed to notify and file liens against Kaleb (the mortgagee) and Nomar (the mortgagor), due process was not provided, the lien was of no effect as to their interests and the interests of the Government were properly extinguished upon foreclosure. Therefore, Dean Bank and the Beauchamps, as innocent successors in interest, took the property free of any claimed IRS liens.

**ii. <u>The IRS Is Estopped or Statutorily Barred From Asserting A Priority Over the Kaleb Mortgage As the Lien Was Never Properly Perfected</u>**

In order for the Kaleb mortgage to be junior or otherwise invalid as to the tax lien, there must be a demonstrated defect in the mortgage held by Kaleb from Nomar and assigned to Raymond 25 Associates. Four years after asserting its liens against other entities, the Government now appears to infer that Kaleb Realty was a hidden nominee or alter ego of Jeffrey Rose, that the mortgage between Nomar Realty and Kaleb was not supported by adequate consideration, or was fraudulently made. Therefore, the Government infers that the tax liens took priority over the Nomar-Kaleb mortgage once they were filed and that the current owners should be charged with notice of the Government's claims of fraud involving two parties who were never named in the liens—Nomar and Kaleb.

26 U.S.C. § 6320 provides that the IRS must give notice and an opportunity to be heard to the taxpayer not more than five (5) days after the filing of a lien ***against that person's interests***. <u>26 U.S.C. § 6320 (1) and (2)</u>. (emphasis added). "The character, operation and extent of the lien must be ascertained by the terms of the statute which creates and defines it." <u>F.P. Baugh v. Little Lake Lumber Co.</u>, 297 F.2d 692, 695 (9th Cir. 1961) (<u>cert. denied</u>, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962). The provision of the Code of Federal Regulations dealing with the filing of notice, 26 C.F.R. § 301.6323(d)(1), provides that;

> The notice [of tax lien] shall be filed on Form 668, "Notice of Federal Tax Lien Under Internal Revenue Laws". Such notice is valid notwithstanding any other provision of law regarding the form or content of a notice of lien.

<u>Baugh</u> involved the validity of an IRS lien against the property of a partnership and the respective partners. The Little Lake Lumber Company was a partnership of individuals named McCulloch, Bryan and Kramer. <u>Id.</u>, at 693. Proceedings to foreclose a chattel mortgage were

commenced against the company. Assessments for Withholding and F.I.C.A. taxes were made against the three partners, d/b/a Little Lake Lumber Company. The IRS, pursuant to §§ 6321, 6322 and 6323, filed a notice of a tax lien to "Chas. E. McCulloch et al 'Residence or Place of Business' 'Little Lake Lumber Co....'" Id. In determining the priority of the chattel mortgage vis-à-vis the tax lien, the Court held that this was insufficient notice of a tax lien against any right, title and interest in the property of the partnership or any of the partners other than McCulloch. Id., at 696.

The Ninth Circuit, in interpreting Section 301.6323(d)(1) *supra*, and the corresponding sections of Title 26 of the United States Code stated that, "[i]t is clear that the Commissioner interpreted the legislation [26 U.S.C. §§ 6321 and 6323] as requiring him to provide a form which **would disclose the names of the taxpayers with reasonable preciseness**." Baugh, 297 F.2d at 695. (Emphasis added). "The Commissioner, having drafted the form which required the naming of the taxpayer against whom the lien is claimed, should not ask the Court to place in the notice the names of persons whom his draftsman attempted to include..." Id.

The Kaleb-Nomar mortgage was duly recorded in the Land Evidence Records in the Town of Narragansett. Therefore, the Government had notice of the existence of a recorded interest held by Kaleb, as mortgagee, and Nomar, as mortgagor, in the property. If the Government believed that Kaleb or Nomar were alter egos or nominees of Jeffrey Rose, or that these recorded interests were invalid, then it had a statutory duty to perfect and publish those claims by filing proper notices against any right, title and interest of Kaleb and Nomar, and by serving such notice on them pursuant to § 6320. For unknown reasons, the Government chose not do that. Based on the holding in Baugh, *supra*, the Government's claims of statutory lien must accordingly fail as to the Defendants' interests.

Nothing of record supports the Government's theory in this regard. In fact, the Government did not advance any such allegation in its Complaint. Indeed, **the Government admits that Borland took title subject to the Kaleb mortgage**. (See, Plaintiff's Complaint, ¶ 10). If the Government believed that the Kaleb mortgage was compromised at the time of filing of these tax liens, the Government was obliged to file properly perfected liens or to institute litigation against the right, title and interests of Nomar Realty and Kaleb Realty. Had the Government done so, the rights of the subsequent *bona fide* purchasers, the Beauchamps and Dean Bank, would not have intervened. The Government never acted, did not perfect such liens according to statute, and is accordingly estopped or statutorily barred from advancing this new assertion to upset the title of the Defendants, who are *bona fide* purchasers of the property.

**iii. The Mortgage Between Nomar and Kaleb, and the Assignment to Raymond 25 Associates, LLC, Was Prior In Time, and Thus Superior to the IRS Liens**

The recordation of a mortgage is "notice to the world" that the property described is subject to the encumbrance. Coates v. Wilson, 20 R.I. 106, 37 A. 537 (1897). 26 U.S.C. § 6323(a) provides that, "[t]he lien imposed by section 6321 shall not be valid as against any...holder of a security interest...until notice thereof...has been filed by the Secretary." A *duly recorded* mortgage filed prior in time to a federal tax lien has priority over the tax lien. Ormsbee v. United States, 23 F.2d 926 (S.D.Fl. 1928).

In this case, Nomar Realty Trust, a party never named in a tax lien, gave a mortgage to another unnamed party, Kaleb Realty, in the face amount of $52,000, with interest accruing at the rate of 16.75% per annum, in 1993. This mortgage *was duly recorded* in the Land Evidence records. In Rhode Island, once a mortgage has been given, a stranger to it, acquiring an interest

in the mortgaged property, gets no equity against the mortgagee at variance with the latter's rights. Holland v. Citizens Savings Bank, 16 R.I. 734, 19 A. 654, 655 (1890).

The notices of federal tax lien were not filed until November of 2004. Thus, the principle of priority of "first in time, first in right" applies to give the Kaleb mortgage priority over the federal tax liens. See, Meyer v. United States, 375 U.S. 233, 236, 84 S.Ct. 318, 322 (1963) (citing, United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367 (1954)).

Furthermore, notwithstanding any alleged knowledge on the part of Raymond 25 Associates, LLC of the recording of the federal tax liens against Jeffrey Rose and Borland, the assignment of the Kaleb mortgage to Raymond 25 Associates would not operate to defeat the priority of the Kaleb mortgage over the liens. See, Potter v. United States, 111 F.Supp 585, 589 (D.R.I. 1953) ("it can be seen that if the plaintiff had full knowledge of the Government's lien here, he could have made certain that he would have been protected, by taking an assignment of the old mortgage"). Under Rhode Island law, a senior mortgagee is under no legal obligation to give notice of his rights to a junior encumbrancer. See, Case v. Mortgage Guarantee and Title Co., 52 R.I. 155, 158 A. 724, 726 (1932).

Finally, the Government's recent claim that the Kaleb-Nomar Realty mortgage was fraudulent or that no value passed is unsupported by the uncontested *public record* of title and never formed the basis of its initial claims as evidenced by the liens. To determine the intent of a deed, one needs only to look at the intent expressed in the deed, and not some secret, undisclosed intention. Sullivan v. Rhode Island Hospital Trust Co., 56 R.I. 253, 185 A. 148, 150 (1936). The mortgage deed between Nomar and Kaleb, and the underlying note clearly express an intent to pass value to Nomar, as mortgagor, in exchange for an interest in the property to Kaleb, as mortgagee. There is no genuine issue as to the material fact that the interests of Borland, Jeffrey

Rose's interests as a hidden principal in Borland, and the coincident federal tax liens naming Rose and Borland were all junior to the Kaleb mortgage. Judgment for the Defendants as *bona fide* successors in title to Kaleb should enter accordingly.

**iv. <u>The IRS Was Given Notice of Raymond 25 Associates, LLC's Intention to Foreclose on the Mortgage Pursuant to Statute And Failed to Respond. Any Lien Was Accordingly Extinguished</u>**

Even though the Defendants contend that the lien of the Government was ineffective from the outset, the lien, if ever viable, has been effectively terminated. It is uncontested that Raymond 25 notified the IRS of its interest to foreclose on the Kaleb mortgage in 2006. In seeking to foreclose on its tax lien the Government completely ignores clear Federal law and the IRS's own procedures. Under 26 U.S.C. § 7425 (b):

> a sale of property on which the United States has or claims a lien...under the provisions of this title, made pursuant to an instrument creating a lien on such property,...or pursuant to a nonjudicial sale under a statutory lien on such property...(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if---(C) notice of such sale is given in the manner prescribed in subsection (c)(1). 26 U.S.C. § 7425 (b)(2)(C).

Subsection (c)(1) provides that, "[n]otice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." 26 U.S.C. § 7425 (c)(1) (parenthetical in original). The "regulations prescribed by the Secretary" are set forth in 26 C.F.R. § 301.7425-3T, entitled "Discharge of Liens; Special Rules". § 301.7425-3T reads, in pertinent part;

> a notice of a non-judicial sale shall be given, in writing by registered or certified mail or by personal service, not less than 25

> days prior to the date of sale[1]... to the Internal Revenue Service (IRS) official, office and address specified in IRS Publication 786, 'Instructions for Preparing a Notice of Nonjudicial Sale of Property and Application for Consent to Sale'. Id.

Publication 786 provides that, "a Notice of Nonjudicial Sale must be submitted to, or consent to sell the property free and clear of the United States liens or title must be obtained from the Secretary (*delegated authority to*) Technical Services Advisory Group Manager for the area in which the Notice of Federal Tax Lien was filed." IRS Publication 786, p.1, *General Information*. (parenthetical in original). The IRS area office in Rhode Island is located at 60 Quaker Lane, Warwick, Rhode Island. The IRS regional office is located in Andover,Massachusetts.

The foreclosing assignee of the Kaleb mortgage, Raymond 25 Associates, LLC, by its attorneys concededly submitted notice via certified mail, return receipt requested to the IRS offices located in Warwick, Rhode Island and Andover, Massachusetts. These notices were mailed on December 22, 2005 and received on December 23, 2005 in Warwick, Rhode Island and December 27, 2005[2] in Andover, Massachusetts.

The foreclosure auction was held on January 19, 2006; twenty-seven days after receipt of the notice by the IRS Warwick office and twenty-eight days after notice was mailed out, return receipt requested[3]. No reply, inquiry, or communication of any kind from the IRS or any other party in interest, was received by Raymond 25 Associates, LLC or its counsel.

Pursuant to 26 U.S.C. § 7425(d);

> "[i]n the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary may redeem such property within the period of 120 days

---

[1] Reference is made in the ellipses to paragraph (d) of this section which provides in subparagraph (2) those factors which render notice inadequate. This section is discussed further below.

[2] Although the stamped date of receipt on the Postal Service Green Card reads December 27, 2004, it seems clear that the stamp was misaligned and that the correct date should reflect the year as 2005.

[3] 26 C.F.R. § 301.7425 3T provides that "[t]he provisions of section[] 7502 (relating to timely mailing treated as timely filing)...apply in the case of notices required to be made under this paragraph."

> from the date of such sale or the period allowable for redemption under local law."

The Government never sought to redeem this property from foreclosure. The sale to the Beauchamps took place on June 28, 2006, more than 120 days from the date of sale at auction. Thus, there is no genuine issue of material fact that these notices were issued pursuant to law and were in fact received by the IRS at these offices, and that the IRS never sought to redeem the Property before the closing. Any purported liens of the IRS were accordingly discharged pursuant to 26 U.S.C. § 7425(b) as a matter of law.

**v. The IRS Has a Statutory Duty to Inform a Mortgagee of Any Perceived Deficiencies in the Noticed Foreclosure and Failed to Do So. The Resulting Foreclosure Is Accordingly Effective As a Matter of Law**

26 C.F.R. § 301.7425-3T delineates the IRS's obligations upon receipt of a foreclosure notice,

> "if the IRS determines that the notice is inadequate, the IRS will give written notification of the items of information which are inadequate to the person who submitted the notice.... In *any case* where the person who submitted a timely notice *which indicates his name and address does not receive, more than 5 days prior to the date of sale, written notification from the IRS that the notice is inadequate, the notice shall be considered adequate for the purposes of this section*." 26 C.F.R. § 301.7425(d)(2) (emphasis added).

No notification of inadequacy was ever received with respect to the notice of foreclosure or any deficiency therein, nor was any objection to the foreclosure asserted by the Government.

The requirement that service of notice of a foreclosure sale upon the IRS be made by registered or certified mail or by delivery in person is mandatory. Colorado Property Acquisitions v. United States, 894 F.2d 1173, 1174 (10th Cir. 1990). However, from there, "the IRS may not simply ignore an inadequate notice and retain the right to levy on the property after

the sale". Whiteside v. United States, 833 F.2d 820, 822 (9th Cir. 1987). "Where the IRS does not object to the notice more than five days prior to the sale, the notice shall be considered adequate for the purposes of this section." Id. (internal citations omitted).

In this case, notice was sent via certified mail, return receipt requested to the IRS offices in Warwick, Rhode Island and Andover, Massachusetts. The notices were in fact received. The notice was on the letterhead of Attorney John T. Sheehan, Jr., which bore his name and address, and identified the property as, "25 Raymond Drive, Narragansett Rhode Island, designated as Plat NQ. Lot 44 14 of the Tax Assessor's Records of the Town of Narragansett, Rhode Island." The sale was noticed for "January 19, 2006, at 2:00 p.m. local time on the premises located at 25 Raymond Drive, Narragansett, Rhode Island." The notice provided that, "[t]erms of sale shall include a down payment of Five Thousand ($5,000.00) Dollars upon the acceptance of the successful bid, payable in cash or bank or certified check..." Finally, the notice set forth the fact that the, "original principal sum of the Mortgage Note was Fifty Two Thousand ($52,000.00) Dollars". All of the essential information required by federal law was accordingly provided in the notice of foreclosure.

An interesting factual pattern was presented in Whiteside v. United States, *supra*. In Whiteside, the plaintiffs were mortgagees on a property owned by another couple, the DeWindt's. The IRS had recorded liens against the DeWindts. After the property owners went into default, the Whitesides commenced foreclosure proceedings through a trustee. The trustee submitted notice to IRS and the IRS brought a claimed deficiency to the attention of the trustee, who submitted additional information. The IRS did not object to this second notice. Thereafter, the Whitesides purchased the property at the trustee's sale. The IRS then levied against the

property. In reversing the summary judgment entered in favor of the IRS in the District Court, the Ninth Circuit held that;

> "the Whitesides provided the IRS notice that was timely but defective. This shifted the burden to the IRS to notify the Whitesides of the defect. Under the plain language of the regulations, the defect in the notice was cured when no IRS objection was received by the trustee five days before the sale. Since the notice of sale was thus deemed effective, it operated to extinguish the government's lien once the sale was consummated." Whiteside, 833 F.2d at 822.

In this case, the IRS, was duly and timely notified of the essential information concerning the pending foreclosure sale. The Government then had the obligation to bring any defect in the foreclosure process to the attention of the assignee. No defect has ever been claimed. Accordingly, the foreclosing assignee and all parties obtaining interests thereafter were entitled to assume that the IRS relinquished or abandoned any rights, title or interests it may have otherwise had in the property. Judgment should enter as a matter of law accordingly.

### c. THE IRS LIENS ARE SUBORDINATE TO THE INTERESTS OF THE DEFENDANTS

#### i. The IRS Tax Liens Only Sought to Attach The Right Title And Interest of Jeffrey Rose and Borland Realty

The IRS only claimed a lien on all of the right, title and interest of Jeffrey Rose and Borland Realty. As an initial matter, Jeffrey Rose appears nowhere in the chain of record title. Furthermore, Borland Realty assumed a quitclaim interest subject to the preexisting mortgage of record between the unnamed parties, Nomar and Kaleb. Therefore, any interest of Borland was clearly subject to divestiture by Kaleb Realty. Since the IRS's interest attached only to any interest of Borland, it too was subordinate to the preexisting Kaleb mortgage. Once that mortgage was foreclosed, Borland's secondary interest was legally extinguished, and the IRS's

subordinate interest was rendered discharged, divested and unenforceable as against the property.

**ii. The Defendants Are Alternatively Entitled to Equitable Subrogation**

The Government claims that pursuant to 26 U.S.C. § 6323(a), since a Federal Tax Lien was filed before the mortgage granted to Dean Bank was recorded, the exception to the rule granting priority to previously-recorded mortgages does not apply. See, Plaintiff's Rule 16(c) Statement, n. 1. However, the Plaintiff again misinterprets the law.

Federal law regarding tax lien matters states:

> [w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 and 6324. 25 U.S.C. § 6323(i)(2)

The law with regard to subrogation in Rhode Island has been defined as the "substitution" of one person in the place of another with reference to a lawful claim or right and is a device adopted by equity to compel the ultimate discharge of an obligation by the party who, in good conscience ought to pay it. U.S. Inv. and Dev. v. Dept. of Human Services, 606 A.2d 1314, 1317(R.I. 1992)

Subrogation is either legal or conventional. Hospital Service Corp. of Rhode Island v. Pennsylvania Insurance Co., 227 A.2d 105, 109 (R.I. 1967). Legal subrogation arises where a person under a secondary obligation to pay a debt does so and, thereupon, becomes subrogated to any right which the creditor may have had, particularly in the nature of security, as against the primary obligor. Industrial Trust Company v. Hanley, 53 R.I. 180, 181 (1933). Conventional subrogation is based upon an agreement and exists where a person, under no obligation originally, undertakes by agreement with an obligor to pay his debt with the understanding and agreement that he will have the same or equivalent security to that held by the original creditor.

Id. However, because subrogation is a restitutionary doctrine founded in equity, no contract is required for subrogation rights to accrue. U.S. Inv. and Dev., supra, at 1318. In applying notions of subrogation, equity and justice are primary concerns. Conaty v. Guaranty Loan Co., 62 R.I. 470, 478 (1939).

Equitable subrogation has been applied in Federal Court actions under circumstances quite similar to the present case. In the case of Han v. United States, 944 F.2d 526 (9th Cir. 1991), the plaintiffs successfully argued that they were equitably subrogated to the priority position of a lender whose existing loan they had paid off and discharged when they purchased the property. The IRS was, accordingly, precluded from foreclosing on the property. Id at 527.

The facts in Han bear repeating. The plaintiffs purchased a house from Yue Khang Lok. Because Lok failed to pay $2.3 million in income taxes for 1985-1987, the IRS filed a lien against the property. Although the lien was properly recorded before closing, the plaintiffs were unaware of it until after escrow closed. Id. The plaintiffs' real estate agent knew of the tax lien, but Lok had represented to the real estate agent that the IRS lien would be paid off before the close of escrow. Thus, the real estate agent did not advise the plaintiffs of this problem. Id at 527-28.

At the time of sale, World Savings and Loan Association held a first trust deed for $367,000.00 which was recorded prior to the tax lien recordation. Id at 528. This loan was paid off in escrow. After escrow closed, the IRS levied against the property, putting the IRS in constructive possession of the property. Id. In an attempt to stave off the foreclosure sale and to protect their investment, the plaintiffs filed a complaint for wrongful levy and for injunctive relief against the IRS. Id at 527.

The Hans argued that they were entitled to be "equitably subrogated" to World Savings' position as first place lien holder because they paid and discharged World Savings' first trust deed. Under the doctrine of equitable subrogation, the plaintiffs sought to stand in the shoes of World Savings and retain the same priority that World Savings had on its trust deed. The District Court rejected the equitable subrogation argument, finding that the plaintiffs had imputed knowledge of the tax lien because of the real estate agent's actual knowledge. Id at 528.

On appeal, the Ninth Circuit noted that equitable subrogation is appropriate where:

> (1) Payment [was] made by the subrogee to protect his own interests
> (2) The subrogee [has] not acted as a volunteer
> (3) The debt paid [was] one for which the subrogee was not primarily liable
> (4) The entire debt [has] been paid
> (5) Subrogation [would] not work any injustice to the rights of others. Id., at 529 (cites omitted).

The Court acknowledged that equitable subrogation is denied to a party who has knowledge of an existing encumbrance but not to a party who *has only constructive notice* of an existing encumbrance. Id at 530. The Court held that the plaintiffs had only constructive knowledge of the encumbrance and not actual notice of the encumbrance and, thus, equitable subrogation *did* apply. In reaching this conclusion, the Court stated that "[I]t is well settled that recording gives only constructive notice, not actual notice." Id. See also Industrial Trust Company v. Hanley, 53 R.I. 180, 182 (R.I. 1933) (Equitable subrogation applied regardless of the fact that the subrogor had failed to find the junior encumbrance upon the record.) Accordingly, the Court reversed the grant of summary judgment in favor of the IRS and held that the plaintiffs were equitably subrogated to all liens and encumbrances recorded prior to the tax lien in question which were paid from the proceeds of the sale. Han at 531. Similarly, the

Government's assertions in this case should be rejected based on the theory of equitable subrogation.

### iii. Equitable Subrogation Has Been Applied by this Court To Establish Priority Of A Mortgagee Over An IRS Tax Lien

In Potter v. United States, 111 F.Supp. 585 (D.R.I. 1953), this Court applied Rhode Island law on equitable subrogation in circumstances similar to the instant case. On June 29, 1949, Harry Crawshaw's Grill executed a promissory note to Margaret Crawshaw (hereinafter "Margaret") in the sum of $11,000.00. To secure payment of this Note, the corporation executed a mortgage on certain restaurant equipment. This mortgage was duly recorded in the Town Clerk's office in East Providence. Id at 586. After the mortgage was filed, the IRS recorded a notice of tax lien against Harry Crawshaw's Grill. The corporation defaulted, and Margaret instituted foreclosure proceedings against the property. Id at 586. In order to stop the foreclosure proceedings, the corporation approached the plaintiff to request funds sufficient to pay off the balance due to Margaret. The plaintiff, being completely ignorant of the existence of the tax lien filed by the IRS, advanced to the corporation the sum required to pay off the balance due to Margaret. The corporation then delivered a note to the plaintiff which was secured by a mortgage executed to the plaintiff on the same property which had previously served as security for the earlier Note. This mortgage was then duly recorded. Id at 587.

Upon default, the plaintiff commenced foreclosure proceedings against the mortgaged property. On the same date, the IRS, under a duly issued warrant based upon the lien, seized the personal property for non-payment of taxes. Id. The plaintiff then commenced litigation.

To establish the priority of his claim over that the IRS, the plaintiff relied on the theory of conventional subrogation. Priority was claimed to the extent of the amount advanced by the plaintiff to discharge the previous mortgage on the corporation's personal property. This was the

same property upon which the IRS had filed its lien, unknown to the plaintiff. The plaintiff contended that the IRS was in no worse position than it was before the discharge of the old mortgage and that the plaintiff, having advanced the funds to discharge that mortgage and having become the new mortgagee of the property, was subrogated to the rights of the previous mortgagee. Id. The IRS argued that because its lien was placed on the mortgaged property *before* the plaintiff's mortgage was executed, its claim had priority over that of the plaintiff. Id at 587-88.

The Court stated Rhode Island subrogation law as follows:

> A person under no obligation who undertakes by agreement with an obligor to pay the latter's debt with the understanding that he will have the same or equivalent security to that held by the original creditor, and subsequently pays that obligation, will be subrogated to the rights of the original creditor, provided that the entire transaction placed no innocent third party in a position more unfavorable than that in which he originally stood…*Constructive notice of the junior lien is insufficient to defeat his right of subrogation, and his failure to find the junior encumbrance on the record will not be sufficient reason to deny him relief in equity*…Mistake is considered a proper ground for relief in equity. Id at 588 (emphasis added).

Thus, equity will regard the substance rather than the form of the transaction and will treat the new mortgagee as the equitable assignee of the original mortgagee's rights, in the absence of intervening equities. Id.

The Court stated that subrogation under such circumstances places the government in no worse position than it was in before the discharge of the old mortgage and that it was not entitled to be unjustly enriched by the plaintiff's mistake. Id at 589. Therefore, the Court held that the plaintiff was entitled to priority over the IRS. Id. See also Dietrich Industries v. United States, 988 F.2d 568 (5th Cir. 1993) (The purchaser of encumbered property who discharges a senior lien

as part of the purchase price is entitled under the principles of equitable subrogation to subrogate to the position of priority over a junior (IRS tax lien) recorded lien).

As applied to the instant case, the factors set forth by the Ninth Circuit in Han are all met. First, the Beauchamps took title to the property, financed by a purchase money mortgage to Dean Bank. The proceeds of this mortgage were applied to purchase the property and succeed to the right title and interest held by Raymond 25 Associates. Raymond 25 Associates, having paid off the obligation owed to Kaleb Realty was subrogated to the rights of Kaleb. Dean Bank, having paid Raymond 25 Associates for their mortgagor's title and accordingly having paid off the obligation paid by Raymond 25 Associates, is subrogated to the rights of Raymond 25, Associates. Therefore, the Defendants are subrogated to whatever rights Kaleb was entitled, to the extent of, and consistent with the amortization schedule. See, Exhibit O.

The payment to Raymond 25 Associates, LLC for the property was not gratuitous and reflected the fair market value of the property. The debt satisfied by the Dean Bank mortgage was not one for which either the Beauchamps nor Dean Bank were liable, primarily or otherwise, and the entire debt was paid. Finally, the IRS failed to adequately protect its interests in the property in the first instance, and is in fact in no worse a position than it would be had the Kaleb mortgage assigned to Raymond 25 Associates not been discharged. See, Potter v. United States *infra*. The IRS would instead occupy precisely the same position as a junior lien holder. True injustice would result were the IRS allowed to foreclose on the property after relinquishing its rights to claim an interest in the property through inaction and by failing to name those persons whom it now asserts were privy to Jeffrey Rose.

In any event, if the transferee of a mortgagee is a *bona fide* holder for value without notice, the transferee is protected from the defense that the mortgage was granted for reasons that

defeated the equitable claims of others. See, Emery v. Mariano, 43 R.I. 376, 113 A. 3 (1921). Although liens were recorded in Town Hall, according to the Court in Han, this fact alone is insufficient to charge a party with notice of a lien. See, Han, at 530. Since the liens did not name or challenge the validity of the Kaleb mortgage and since they merely named a party whose interest was subordinate as a matter of record to the Kaleb mortgage, the Defendants cannot be charged with knowledge of the claims now advanced by the Government.

The Defendants were also assured, by means of an affidavit provided by the attorney for Raymond 25 Associates, LLC, the veracity of which is not challenged, stating that notice had been duly sent to all parties in interest and none had come forward to assert their interests in the property. Therefore, the Defendants were entitled to rely on the representations set forth by the affidavit and the inactivity of the Government, in believing that the IRS was not claiming, or was abandoning, any interest in the property. They accordingly did not have actual or constructive notice of the interests now advanced by the Government in this suit.

## IV. CONCLUSION

For the reasons set forth hereinabove, and for the authorities cited herein, there is no genuine issue of material fact in dispute and the Defendants are entitled to judgment as a matter of law. It is undisputed that the IRS liens, applied on their faces only to the right, title and interests of Jeffrey Rose and Borland Realty, that any interest of those parties were, at best, junior to the duly recorded Kaleb mortgage on the property and that the IRS never perfected a lien against the prior mortgagor (Nomar) or the prior mortgagee (Kaleb). Once the Kaleb mortgage was foreclosed, as a matter of law, any possible interest of the IRS was statutorily extinguished, divested and discharged. Furthermore, the Government's failure to redeem the

foreclosure or even contact the foreclosing party within the 120 day redemption period legally and equitably estops the Government from claiming the interest it now seeks to assert.

To the extent that the IRS liens are viable, as a matter of law, the Defendants are equitably subrogated rights under the prior mortgage which exceeded the fair market value of the property. Judgment should enter for the Defendants accordingly.

Respectfully submitted,
Defendants Keith Beauchamp, Wayne
Beauchamp and Dean Cooperative Bank
By their Attorneys,

/S/ JAMES P. MARUSAK

JAMES P. MARUSAK
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
401-274-6644
fax: 401-331-9304
jpm@gsm-law.com

CERTIFICATION

I hereby certify that on the _____ day of ________ 2008, a true copy of the foregoing document was served upon each attorney of record, or pro se litigant, listed below by electronic filing of this document with the US District Court for the District of Rhode Island.

Robert J. Kovacev, Trial Attorney
US Department of Justice – Tax Division
PO Box 55
Ben Franklin Station
Washington, DC 20044
RobertJ.Kovacev@usdoj.gov

/S/ James P. Marusak