# B

33323

BOOK 658 PAGE 911

COMMERCIAL MORTGAGE

KNOW ALL PERSONS BY THESE PRESENTS THAT Keith Beauchamp and Wayne Beauchamp, having a principal business address of 89 Central Street, Manville, RI, 02838, hereinafter called the Mortgagor, for consideration paid, grants to the

DEAN CO-OPERATIVE BANK

Located at 21 Main Street, Franklin, Norfolk County, Massachusetts 02038, hereinafter called the Mortgagee, with MORTGAGE COVENANTS, to secure (i) payment of Three Hundred Forty Four Thousand Dollars and 00/100 ($344,000.00) with interest thereon, pursuant to the terms and provisions of a certain note of even date herewith and such further sums as may be advanced by the Mortgagee as authorized under Massachusetts General Laws, (ii) obligations under a certain Construction Loan Agreement if entered into in connection herewith; (iii) the obligations of Guarantors under any guaranty given with respect to obligation secured hereby; (iv) all other obligations contained in or created under the Note or in or under any other instruments, documents or undertakings given or entered into as security for or in connection with the Note; and (v) all covenants and agreements contained herewith (all of the above enumerated obligations, as any of the same may be from time to time amended or extended, jointly and severally constituting the "Obligations"), the collateral hereinafter specified.

All references in the Mortgage Documents to a "note" or a "note of even date" or similar reference shall be deemed to refer to the Note, and all other future replacements, renewals, amendments, extensions, modifications and substitutions thereof.

1. THE COLLATERAL. The following items constitute the Collateral given to secure the Obligations hereunder and shall be included within the word "Collateral" as used herein:

1.1 The land with buildings thereon known and numbered as:

25 Raymond Street
Narragansett, RI 02882

as more specifically described in Exhibit "A" Attached Hereto

1.2 STRUCTURES, FIXTURES AND IMPROVEMENTS. Insofar as the same are or can, by agreement of the parties, be made a part of the realty, all buildings, structures and improvements, fixtures, equipment and appliances, personal property, goods, supplies and materials now or hereafter erected or placed on or affixed to the Premises or used or intended to be used in connection therewith or paid for from the proceeds of the loan secured hereby, including without limitation all elevators and elevator machinery, apparatus and equipment for the production and distribution of heated and cooled air conditioning controls, fuel storage tanks, bins and other fuel facilities, all kitchen, bathroom and plumbing fixtures, machinery, equipment, apparatus and facilities, ovens, stoves, refrigerators, dishwashers, washing machines and dryers, all sprinklers and fire

extinguishing systems, doorbell and alarm systems, all electric power generating systems, transformers and electrical distribution systems, equipment and facilities, ventilation and blower systems, garbage and trash receptacles, compactors and incinerators, all window shades, blinds, screens and screen doors, storm and other detachable windows and doors, awnings, cases, counters, closets, partitions, carpets and other floor coverings, signs, directories and other advertising or informational equipment, steel, bricks, lumber and masonry materials, paving materials, fences and fencing materials, insulation and sound deadening materials, trees, shrubs and other landscaping items and improvements.

1.3 ITEMS NOT PART OF REALTY. All personal property belonging to Mortgagor situated on or about the Premises or used in connection therewith or paid from the proceeds of the loan secured hereby, including/without limitation any of the items referred to in Paragraph 1.2, which are not and cannot, by agreement of the parties, be made a part of the realty.

1.4 PERMITS AND LICENSES, CONTRACTS. All contracts, agreements, permits, licenses and approvals entered into or obtained by or on behalf of Mortgagor or Mortgagor's predecessors relating to the construction, reconstruction, development and use of the Collateral, now existing or hereafter obtained or entered into, including without limitation construction contracts and bonds, architectural, engineering and consulting contracts, contracts for materials and fixtures, building permits, variances, special permits, and curb cuts, occupancy permits, health permits, liquor, Victualer's and hotel permits and licenses, agreements and letter of assurance from utilities and Mortgagor's rights in all plans, drawings and specifications relating to or prepared in connection with the Premises.

2. <u>GRANT OF SECURITY INTEREST.</u> In addition to and not in limitation of the mortgage interest in real estate herein granted, Mortgagor hereby grants to Mortgagee, as security for payment and performance of the Obligations, a Security Interest in accordance with the provisions of the Uniform Commercial Code in and to any item or category of Collateral which may be made subject to such an interest and in all proceeds and products therefrom, accessions thereto and substitutions therefor.

3. <u>ASSIGNMENT OF LEASES.</u> In addition to and not in limitation of any other security given for payment and performance of the Obligations, Mortgagor hereby grants, assigns and transfers the Leases covering the collateral to Mortgagee. Notwithstanding such assignment, for so long as no default exists under the Obligations, Mortgagor shall have the right to collect and retain all rents, issues and profits from the Leases and to exercise all rights to the use, enjoyment and control of the property obtained thereunder, provided that Mortgagor shall not collect any rents, issues or profits for a period of more than thirty (30) days in advance. Whether or not a default under the Obligations exists, or Mortgagee has exercised its right hereunder, Mortgagor agrees faithfully and promptly to perform all of its duties and obligations under the Leases, to enforce and secure performance of the occurrence of a default under the Obligations and at any time

thereafter until Mortgagee has accepted cure, Mortgagee may, without waiving such default or any other right or remedy with respect thereto, exercise all of Mortgagor's rights under the Leases, including without limitation the right to collect and expend or apply rents, issues and profits and to use, enjoy and control property obtained thereunder. Until such time as Mortgagee affirmatively elects to exercise its rights hereunder, Mortgagee shall be under no obligation, claim or liability arising prior to such exercise and any such obligation, claim or liability arising after exercise, except such as are caused by the willful malfeasance or gross negligence of Mortgagee. Mortgagee shall have the right to expend or apply any rents, issues or profits received by it in the exercise of its rights hereunder to the satisfaction of the Obligations and to reimburse Mortgagee for any costs or expenses incurred by it in connection with the Obligations and with the exercise of its rights hereunder in whatever order Mortgagee deems appropriate. Mortgagor agrees to cooperate with Mortgagee in the establishment and exercise of Mortgagee's rights hereunder, including without limitation by the execution upon request of an assignment of lease in such expanded form as Mortgagee may require and the giving of any notices to tenants and other third parties requested by Mortgagee in connection herewith.

4. MORTGAGOR'S COVENANTS. Mortgagor covenants and agrees:

4.1 OBSERVANCE OF OBLIGATIONS. To pay, perform and observe all of the Obligations.

4.2 REPAIR, OBSERVANCE OF LAW, USE. To keep and maintain the Collateral at all times in good order, repair and conditions, permitting and suffering no strip, waste or abandonment of the Collateral to occur nor any violation of any law, ordinance, rule or regulations or any order or decree by any court or agency of competent jurisdiction or of any public or private restriction affecting the Collateral or the use thereof and not to materially change or alter the Collateral or the use of which the same is devoted without the prior written consent of Mortgagee.

4.3 HAZARDOUS WASTE. To maintain the Collateral at all times free of hazardous waste, contaminants, oil, radioactive or other material the removal of which is required or the maintenance of which is prohibited or penalized, and Mortgagor warrants and represents that the Collateral is affected by no such materials as of the date of this Mortgage and Security Agreement or that Mortgagor has fully informed Mortgagee in writing of the existence, extent and exact nature of any such materials affecting the Collateral, has delivered to Mortgagee copies of all permits, licenses and approvals required with respect thereto and is fully authorized and empowered, by virtue of such items, to maintain such materials. Mortgagor agrees promptly: (i) to notify Mortgagee in writing of any change in the nature or extent of such materials maintained; (ii) to transmit to Mortgagee copies of any citations, orders, notices or other material governmental communications received with respect thereto; (iii) to observe and comply with any and all laws, ordinances, rules, regulations, licensing requirements or

conditions relating to the use, maintenance and disposal of such materials and all orders or directives from any official, court or agency of competent jurisdiction relating to the use or maintenance or requiring the removal, treatment, containment or other disposition thereof; and (iv) to pay or otherwise dispose of any fine, charge or imposition related thereto which, if unpaid, would constitute a lien upon the Collateral. Any cost, expense, loss or damage incurred or suffered by Mortgagee and growing out of a failure of Mortgagor to strictly observe and perform the foregoing requirements, including without limitation reasonable attorney's fees, shall be reimbursed to Mortgagee promptly upon demand and, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.4 TAXES AND CHARGES. To pay when due all taxes, charges, assessments and water rates, on or against the Collateral or any interest therein or any payments in lieu thereof, to whomever the foregoing may bear laid or assessed, including without limitation with respect to, condominium units assessments for common expenses.

4.5 PROOF OF PAYMENT OF TAXES AND ASSESSMENTS. To promptly forward to Mortgagee after payment receipted tax bills or other evidence of payment acceptable to Mortgagee covering all items which Mortgagor is required to pay in accordance with the provisions of this Mortgage.

4.6 LIENS ON COLLATERAL. To notify Mortgagee promptly of any lien, encumbrance or security interest existing, arising or asserted against the Collateral or any interest therein and to maintain the Collateral or any interest therein and payable, unless the same have been approved in writing by Mortgagee. With respect to security interest thus approved by Mortgagee, Mortgagor agrees to make all payments that become due to any secured party holding such interest, and, at the request of Mortgagee, to assign to Mortgagee all right, title and interest in and to any and all agreements evidencing such security interest covering any of the Collateral, and Mortgagor hereby grants Mortgagee full power and authority as attorney irrevocable of Mortgagor to make, execute, acknowledge and deliver such assignments. Mortgagor further agrees that if Mortgagor shall default in making any such payments, Mortgagee may, without obligation to do so and without waiving any right or remedy for default hereunder, make such payment or may pay the entire balance due to such secured party. Mortgagor shall reimburse Mortgagee for any amount thus expended promptly upon demand, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.7 FINANCIAL STATEMENTS. To submit to Mortgagee income, expense and other financial statements and data concerning the Collateral, Mortgagor and any guarantor at such times, in such form and containing such information as Mortgagee may from time to time request.

4.8 INSURANCE OF COLLATERAL. To keep the Collateral insured against fire and such casualties and contingencies as Mortgagee may from time to time require, to deposit, at the request of the Mortgagee, all insurance policies or memoranda thereof with Mortgagee forthwith after the binding of such insurance and to deliver to Mortgagee new policies or memoranda for any insurance about to expire at least ten (10) days before such expiration, all such insurance to be first payable in case of loss to Mortgagee and to be written by such companies, on such terms, in such form and for such periods and amounts as Mortgagee shall from time to time approve, and Mortgagor hereby grants Mortgagee in the event of a default hereunder full power and authority as attorney irrevocable of Mortgagor to cancel or transfer such insurance, to retain any premiums or proceeds there from and to apply the same to the indebtedness secured hereby.

4.9 TAXES ON DEBT. To pay Mortgagee on demand the amount of any tax payable by Mortgagor which is attributable to the debt secured hereby, whether such tax is measured by the principal or the interest upon such debt or by Mortgagor's real estate mortgage investments, deposits or otherwise, excluding, however general income taxes levied against Mortgagor.

4.10 PERFECTION AND EXTENSION OF SECURITY INTEREST; COSTS. To take such actions as Mortgagee may reasonably request to perfect, maintain and extend the lien and security interest granted hereunder, including, without limitation the execution and delivery of financing statements, amendments to and extensions of financing statements and to pay all costs incurred by Mortgagee in connection with the perfection and the extension of Mortgagee's security interest hereunder, including without limitation recording and filing fees and reasonable attorney's fees.

4.11 COSTS IN CASE OF BANKRUPTCY OR OTHER PROCEEDINGS. If bankruptcy or other proceedings affecting the Mortgagor involve Mortgagee's interest under this Mortgage and Security agreement, including without limitation probate proceedings, condemnation proceedings, enforcement or other proceedings under any building, zoning, environmental or other law, ordinance or regulation affecting the Premises are commenced or threatened, to reimburse Mortgagee promptly, upon demand for all costs and expenses incurred by Mortgagee in protecting its interest with respect to such proceedings, including without limitation reasonable attorney's fees, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

4.12 COSTS IN CASE OF TERMINATED FORECLOSURE. If foreclosure proceedings are begun because of Mortgagor's default hereunder and are subsequently terminate prior to a foreclosure sale for any reason whatsoever, including but not limited to termination caused by bankruptcy proceedings affecting Mortgagor, redemption or agreement of the parties, to pay to Mortgagee promptly upon demand all costs and expenses incurred in connection with such proceedings, including without limitation reasonable attorney's fees, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

5. MORTGAGEE'S RIGHTS. Mortgagee shall have and Mortgagor hereby irrevocably authorizes and agrees to permit, to cooperate with and to facilitate the exercise of the following rights:

5.1 INSPECTION. To inspect the Collateral and Mortgagor's books and records with respect to the Collateral from time to time upon reasonable notice and without notice for reasonable cause.

5.2 PAYMENTS ON BORROWER'S BEHALF; EXPENSES. To make any payment required to be made by Mortgagor hereunder when due if the same has not been paid by Mortgagor, including but not limited to all taxes, charges, assessments and water rates, or any payments in lieu thereof, which may at any time be or become a lien on the on the Collateral. All such payments made by Mortgagee and the amount of any costs and expenses to which Mortgagee is entitled hereunder shall be reimbursed by Mortgagor to Mortgagee promptly upon demand and, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

5.3 DEALINGS WITH MORTGAGOR'S SUCCESSORS. To deal, without notice, with Mortgagor's successor or successors in interest with reference to this Mortgage and Security Agreement and the Obligations secured hereby in the same manner as with Mortgagor without in any way vitiating or discharging Mortgagor's liability hereunder or upon the Obligations. No sale of any Collateral and no forbearance on the part of Mortgagee or extension of the time for payment or performance of the Obligations or any other indulgence given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of Mortgagor, either in whole or in part, unless expressly so stated by Mortgagee in writing, and Mortgagor hereby expressly waives notice of any such forbearance, extension or other indulgence.

5.4 INSURANCE PROCEEDS. If the Collateral or any part thereof shall be damaged or destroyed by fire or other insured casualty, the amount recovered pursuant to any insurance coverage in effect with respect thereto are hereby assigned and shall be paid to Mortgagee and shall, at Mortgagee's election, be applied towards

reconstruction, repair or replacement of the Collateral, in which event, Mortgagee shall release such proceeds from time to time for such purposes, at such times and upon such terms and conditions as Mortgagee deems appropriate, or may be applied by Mortgagee in satisfaction of the Obligations then remaining unsatisfied, whether or not then due and in such order as Mortgagee determines, and for the foregoing purposes, Mortgagor hereby appoints Mortgagee its attorney-in-fact to negotiate, settle and collect any such proceeds (including without limitation the right to participate in any proceedings relating thereto) without, however, imposing on Mortgagee any obligation to do so.

5.5 EMINENT DOMAIN PROCEEDS. If the Collateral or any part thereof shall be taken by eminent domain or by other act of any public authority, any damages in connection therewith are hereby assigned and shall be paid to Mortgagee and shall, at Mortgagee's election, be applied towards reconstruction, repair or replacement of the Collateral, in which event, Mortgagee shall release such proceeds from time to time for such purposes, at such times and upon such terms and conditions as Mortgagee deems appropriate, or may be applied by Mortgagee in satisfaction of the Obligations then remaining outstanding, whether or not then due and in such order as Mortgagee determines and for the foregoing purposes, Mortgagor hereby appoints Mortgagee as its attorney-in-fact to negotiate, settle and collect such proceeds (including without limitation the right to participate in any proceedings relating thereto) without, however, imposing upon Mortgagee any obligation to do so.

6. DEFAULT. Without limitation, the occurrence of any of the following events shall constitute a default and shall, at Mortgagee's election and upon the expiration of applicable grace periods, if any, authorize and empower Mortgagee to exercise any of Mortgagee's rights and remedies hereunder and at law:

6.1 FAILURE TO OBSERVE OBLIGATIONS. Failure of Mortgagor to pay, perform and observe each of Mortgagor's Obligations, including without limitation failure to pay when due any sum required hereunder or secured hereby as originally scheduled or upon acceleration.

6.2 TRANSFER WITHOUT CONSENT. The sale, transfer, assignment or other disposition of or change by action of law or otherwise in title to the Collateral or any part thereof or in any equity, beneficial or other ownership interest in Borrower, including without limitation by action of law or merger of ownership entities, without first and in each instance having disclosed to Mortgagee the full particulars of any such transfer proposed and obtained from Mortgagee its written consent thereto.

6.3 FORECLOSURE OF OTHER LIENS. If foreclosure proceedings or other proceedings intend to enforce or realize upon any junior or senior mortgage or security interest covering all or any part of the Collateral, including without limitation action to foreclose or levy upon a tax lien, a sheriff's sale or any other proceedings whereby Mortgagor's ownership or right to possession or control of the Collateral may be threatened, should be commenced or instituted (provided that the commencement or institution of such proceedings with respect to an interest junior to Mortgagee's interest hereunder shall not constitute an event of default unless the same continues for more than thirty (30) days, without being withdrawn or otherwise terminated in Mortgagor's favor or shall actually deprive Mortgagor of ownership, possession or control of the Collateral).

6.4 BANKRUPTCY OR OTHER INSOLVENCY. The appointment of a receiver, conservator or similar officer of any of the property of; the making of an assignment for the benefit of creditors or other arrangement of similar import by; or the commencement of any proceedings under any Bankruptcy or Insolvency Law, now or hereafter enacted by or against Mortgagor or any guarantor or endorser of the Obligations.

7. LENDER'S REMEDIES. Upon the occurrence of an event of default and upon the expiration of applicable grace periods, if any, as aforesaid, Mortgagee shall have and may exercise the rights hereinafter set forth without limitation on any other rights which Mortgagee may possess, at law, by agreement or otherwise, all of Mortgagee's rights and remedies to be deemed cumulative and not exclusive:

7.1 ACCELERATION. At Mortgagor's election, to declare all monetary Obligations secured hereby immediately due and payable.

7.2 POWER OF SALE, REAL AND PERSONAL PROPERTY. This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all of the Obligations as hereinabove defined shall be kept and fully performed and that for any breach of the foregoing, Mortgagee shall have, in addition to any rights and remedies set forth herein and in any other instrument, document or undertaking entered into or given by Mortgagor or any other party as security for or in connection with the Obligations or available to Mortgagee as a matter of law, the STATUTORY POWER OF SALE. Mortgagee shall also have, as to personal property forming a part of the Collateral, all the rights and remedies of a Security Party under the Uniform Commercial Code, including the option to proceed as to real estate and personal property separately or to proceed with respect to both together under the law relating to foreclosure of real estate mortgages. If Mortgagee elects to proceed separately, Mortgagee may require Mortgagor to make such Collateral available to Mortgagee at a place to be designated by Mortgagee, and unless such Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Mortgagee will give Mortgagor reasonable notice of the time and place of any

public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made. All requirements for notice with respect to the sale or disposition of personal property shall be deemed met if such notice is mailed by certified mail, postage prepaid, to Mortgagor at the address herein below set forth, as the same may be from time to time changed in accordance herewith, or if no such address is set forth, to Mortgagor's last and usual place of business, at least five (5) days before the time of the sale or disposition. In the event the Mortgagee elects to sell real and personal property together, the giving of those notices required with respect to the foreclosure of a mortgage on real estate will be deemed to be a complete satisfaction of all notice requirements with respect to the sale of personal property.

7.3 POSSESSION. Whether or not Mortgagee has accelerated the Obligations or commenced foreclosure proceedings, Mortgagee shall have the right to enter upon and take exclusive possession of the Collateral and of all books, records and accounts relating thereto without notice and without being guilty of trespass, and if Mortgagor refuses to surrender possession, to invoke any and all legal remedies to obtain possession. Mortgagee may hold, lease, manage, operate or otherwise use or permit the use of the Collateral, itself or by other persona, firms or entities, in such manner for such time and upon such terms as Mortgagee may deem to be prudent and reasonable under the circumstances, and may make such repairs, alterations, additions and improvements and take any and all other action with reference thereto, from time to time as Mortgagee may deem necessary or desirable and any amounts thus expended and any other costs and expenses incurred in the care and management of the Collateral and in prosecuting or defending any action brought by or against Mortgagor or Mortgagee arising out of Mortgagee's possession, including without limitation reasonable attorney's fees, shall be reimbursed to Mortgagee, and such amount, until paid, shall be added to the principal amount of the debt secured hereby and shall bear interest at the rate from time to time charged with respect thereto.

7.4 LIQUIDATED DAMAGES. If a foreclosure sale shall occur with respect to the Collateral, Mortgagee shall be entitled to retain an amount equal to one percent (1%) of the sale price in addition to all costs and expenses allowed by law and by this Mortgage and Security Agreement as liquidated damages.

7.5 SALE IN PARCELS. If a foreclosure sale shall occur, Mortgagee may, at its election, in the exercise of its power of sale, sell the Collateral in parcels, and said sales may be held from time to time in such order as the Mortgagee may determine, and the power shall not be exhausted until all of said Collateral not previously released shall have been sold.

7.6 INTEREST ON SURPLUS. If a foreclosure sale or other disposition of the collateral shall occur and if surplus proceeds shall be realized, Mortgagee shall not be required to pay interest thereon pending distribution.

8. SUBROGATION TO RIGHTS OF PRIOR LIENS. In addition to and not in limitation of any other right or remedy which Mortgagee may possess, Mortgagee is hereby subrogated to the full extent of the Obligations to any and all liens, claims and demands and to the rights of the owners and holders of the same with respect to the Collateral which are paid or satisfied in whole or in part from the proceeds of the Note, and such liens, claims and demands shall be, and each of them hereby is, preserved and transferred to and hereafter shall be deemed to be held by Mortgagee to the same extent that the same would have been preserved, transferred to Mortgagee by the prior holder thereof, notwithstanding the fact that a release, discharge, acknowledgment of satisfaction or other instrument of termination may have been delivered or recorded with respect thereto, provided that a discharge of this Mortgage shall be deemed to constitute also a discharge and release of any such item as to which Mortgagee holds title solely by virtue of its rights under this paragraph.

9. CAPTIONS, GENERAL APPLICATION OF TERMS. Captions and headings employed herein are intended for convenience of reference only and shall not be deemed to affect, modify or define in any way or otherwise be used to construe the meaning of the text. Words used in the singular shall be deemed to include the plural, and pronouns of any gender shall be deemed to include all genders as required by context.

10. INVALIDITY, SEPARABILITY, NEGATION OF USURY. The invalidity, illegality or unenforceability of any provision hereof or of any instrument, document or undertaking secured hereby or entered into in connection herewith or of any particular application thereof shall not be deemed to affect or impair in any fashion the validity, legality or enforceability of any other such provision or application and any instrument, document or undertaking containing such a provision shall continue in full force and effect and shall be interpreted so as to implement as nearly as possible the intention of the parties in the absence of such provision. In the event that any interest payment, fee, charge or other payment collected hereunder or under any instrument, document or undertaking secured hereby or entered into in connection herewith is determined, individually or in the aggregate, to be in violation of any applicable usury or other legal limitation or prohibition, such payment shall be deemed, but only to the extent of such violation, to constitute a payment against principal amount secured hereby, effective as of the date of such payment, and if such application to principal is not sufficient to rectify any such violation, shall be refunded by Mortgagee to Mortgagor upon request.

BOOK 658 PAGE 921

11. NOTICES. Any notice required or permitted to be given hereunder shall be deemed duly given if in writing and mailed, postage prepaid, certified mail, return receipt requested, if to Mortgagor, addressed to:

Keith Beauchamp
Wayne Beauchamp
89 Central Street
Manville, RI 02838

and, if to Mortgagee, addressed to:

Dean Co-operative Bank
21 Main Street
P.O. Box 307
Franklin, Massachusetts 02038

Mortgagor or Mortgagee may change their above set forth notice address only by written notice given as aforesaid.

12. WAIVER OF STATUTE OF LIMITATIONS. Mortgagor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Note or any other Obligations secured by this Mortgage.

13. WAIVER OF MARSHALLING. Notwithstanding the existence of any other security interests in the Collateral held by Mortgagee or by any other party, Mortgagee shall have the right to determine the order in which any or all of the Collateral shall be subjected to the remedies provided herein and the right to determine the order in which any or all portions of the Obligations secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Mortgagor, any Guarantor, any party who consents to this Mortgage and any party who now or hereafter acquires a security interest in the Collateral and who has actual or constructive notice hereof hereby waives and shall be deemed to have waived any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

EXECUTED as an INSTRUMENT under SEAL this 28th day of June, 2006.

Keith Beauchamp Wayne Beauchamp

BOOK 658 PAGE 922

STATE OF RHODE ISLAND
~~Commonwealth of Massachusetts~~

~~Norfolk, ss~~ PROVIDENCE COUNTY

On this 28th day of June, 2006 before me, the undersigned notary public, personally appeared Keith Beauchamp & Wayne Beauchamp, proved to me through satisfactory evidence of identification, being (check whichever applies):
[ X ] *Driver's License or other state or federal governmental document bearing a photographic image,*
[   ] *Oath or Affirmation of a credible witness known to me who knows the above signatory, or* _
[   ] *My Own personal knowledge of the identity of the signatory,* to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

John T. Walsh, Jr.
Notary Public
My Comm. Exp.
7/18/2009

JOHN T. WALSH, JR.
STATE OF - MY - COMMISSION EXPIRES JULY 18, 2009 RHODE ISLAND
NOTARY PUBLIC

# EXHIBIT "A"

That certain lot or parcel of land, together with all buildings and improvements thereon, situated on the southerly side of Chapin Road in the Town of Narragansett, County of Washington, State of Rhode Island, said real estate being laid out and designated as Lot No. 14 (fourteen) on that certain recorded plat entitled "Section 1 North Gate in Narragansett, Rhode Island, L. Douglas Couchon et ux Dorothy L. – Owner Scale 1" = 50' J. A. Johnson Surveyor Dec 1969. "Drainage revisions, May 1971, A. J. Easterbrooks, C. E.

Subject to restrictions of record.

Property Address: 25 Raymond Drive
Narragansett, Rhode Island 02882

Tax Assessor's Plat 44 Lot 14

RECEIVED FOR RECORD
ON 6-30-06 AT 1:44 pm
WITNESS: CAROL ROBBINS, CMC
NARRAGANSETT TOWN CLERK